HENRY BRINKMEIER v. THE MISSOURI PACIFIC RAILWAY COMPANY.

No. 13,765.    (77 Pac. 586.)

SYLLABUS BY THE COURT.

1. RAILROADS — *Injury to Employee — Notice to Company of Defective Apparatus Inferred.* In an action against a railroad company for damages resulting from an injury caused by a patent defect in the original construction of the coupling apparatus of one of its own cars, notice to the company of the defect will be inferred.

2. ———— *Risk Not Assumed Unless Knowledge of Danger be Shown or Imputed.* A railroad brakeman whose duty requires him to couple cars does not assume the risk of injury from a defective coupling apparatus unless he knows, or from all the circumstances should know, the danger arising from its use.

3. ———— *Knowledge of Defect is Not Necessarily Knowledge of Danger.* Contributory negligence in the use of a defective

coupling apparatus cannot be imputed to a railroad brakeman merely because he knows it to be defective. In order to bar recovery, the danger of using the imperfect appliance must be so great and so apparent that a person of ordinary prudence would not encounter it.

4. ——— *When Choice of Dangerous Way Amounts to Negligence.* If a workman have the choice of several ways in which to do his work, he will be negligent if he reject those which are safe for one which is dangerous; but he may adopt any one which a reasonably prudent man would adopt and not be negligent, although others may be absolutely safe.

5. ——— *Propriety of Employee's Method was a Question for the Jury.* Under all the circumstances of this case, the propriety of the conduct of a brakeman in using his foot to control a refractory draw-bar while attempting to make a coupling should have been left to the jury to determine.

Error from Sedgwick district court; D. M. Dale, judge. Opinion filed July 7, 1904. Reversed.

*C. V. Ferguson,* for plaintiff in error.

*J. H. Richards,* and *C. E. Benton,* for defendant in error; *David Smyth,* of counsel.

The opinion of the court was delivered by

Burch, J.: While serving the defendant in the capacity of brakeman the plaintiff was injured in an attempt to couple freight-cars. In an action for the recovery of damages a demurrer to his evidence was sustained, and the railroad company justifies the conduct of the trial court upon three grounds: (1) That it had no notice of the defect in the appliance causing the injury; (2) that the hazard was one incident to plaintiff's employment, and therefore assumed; (3) that the plaintiff was guilty of contributory negligence.

The defective appliance was a part of the equipment of one of the defendant's own cars, and the defect itself was alleged to be one originating in faulty,

construction. If this be true, proof of notice was unnecessary. It was the duty of the defendant to furnish a properly constructed coupling apparatus. Whether the defendant built the car itself, or employed others to do so, or purchased it of reliable car manufacturers, it was bound to know the condition of the coupling contrivance when the car was put into service, and it will not now be heard to say that it had no knowledge of patent, original, structural defects. (*Greenleaf v. Illinois Central Railroad Company,* 29 Iowa, 14, 46.)

In volume 20 of the American and English Encyclopedia of Law, second edition, page 93, occurs the following accurate summary of the authorities :

"Where the defect through which the injury occurs is in the original construction of the appliance or instrumentality, notice thereof to the master is unnecessary. In case of structural defects, knowledge thereof by the master will be inferred. This doctrine is no more than an application of the general rule that it is the master's duty to exercise ordinary care in providing tools, machinery and appliances that are reasonably safe."

In the case of *Alexander v. Town of Mt. Sterling,* 71 Ill. 366, 369, the language of Chief Justice Breese regarding the duty of a municipality to know the character of a structure it supplies for the use of its inhabitants is pertinent to the attitude of a private corporation toward its employees. He said :

"For the proper construction of this sidewalk, it is not denied the town authorities were responsible. They should see to it that such structures are properly made and reasonably safe, and they must be kept so. They, being the projectors of them and the builders of them, are, in law, held to a knowledge of their original condition. It would be absurd to say, they must have notice of the original defect, when

they themselves are the authors of the defect. Why notice to a party of original defects in a work he is bound to make safe and reasonably free from defects? The town being in fault at the outset, no notice was necessary.''

In the case of *Finnerty v. Burnham*, 205 Pa. St. 305, 54 Atl. 996, decided in 1903, an injury occurred from the use of a defective chain in the equipment of a crane. The master supplying the crane attempted to justify on the ground that the chain had been purchased of one of the most reputable manufacturers, and placed in stock; that others of a similar kind had been furnished, so that the employee could select any one he desired; and that general instructions had been given to report, and have repaired, any defects. But the court adopted in full the statement of the law already quoted from the American and English Encyclopedia of Law, and further held:

''Where a chain is used as an attachment to a crane for the purpose of lifting very heavy weights, the same rule that imposes upon the employer the duty of supplying a reasonably safe and suitable crane requires him to furnish a chain of like character.''

The defendant cites certain decisions of this court supposed to favor a different doctrine, but their real purport is misapprehended. Only the general formulas of the law relating to notice of defects were refered to in those cases, and the particular rule under consideration was not discriminated.

The plaintiff was injured while attempting to adjust a draw-bar with his foot, in order to effect a coupling. His evidence tended to prove that when properly constructed the draw-bar is in the center of the car and is held in place by heavy timbers on each side of it, called draft-timbers. Above the neck of the draw-bar is a piece of timber, and below it a strap

or plate of iron, both held fast by bolts running through the ends of the draft-timbers. The draft-timbers should be near enough together to prevent the draw-bar's becoming out of line, and in order to secure a snug fit a large bolt is passed down from the timber above on each side of the draw-bar between it and the draft-timber and through the plate beneath. The car in question had been constructed without the bolts necessary to prevent the lateral play of the draw-bar, and the draft-timbers were so far apart that, when pushed to one side, the head of the draw-bar failed to meet squarely the head of the draw-bar on the car to be coupled, but passed by it, and crushed the plaintiff's foot. A spectator of the accident described the draft-timbers as worn and "slivered up," but the testimony of that witness, as well as that of the plaintiff, clearly showed the primary defect to be one of construction, and the case should have been submitted to the jury, so far as the question of notice to the defendant was concerned.

The contention of the defendant that the plaintiff assumed the risk of injury is based upon his testimony that it was not unusual for draw-bars to be out of line, and that it was necessary almost every day for him to put them in place in order to make couplings. But the plaintiff further testified that, so far as he knew, the only result attending the meeting of cars with a draw-bar out of line was that they would fail to couple. The draw-bar in question was not movable to such an extent that it was obvious that it would slip by. There was no evidence that any circumstances of that character had ever been brought to the plaintiff's attention. He was a brakeman, and not a skilled mechanic or scientific car-builder. He was not chargeable with greater knowledge of the effect of the

relation of pieces and the operation of forces than his daily experience furnished. If the knuckles of the draw-bars would still meet and the cars simply recoil, as the plaintiff believed would be the case if the draw-bar were not in position, there was no danger, and without evidence indicating that the erratic action of the draw-bar in this case might or should have been anticipated, or that the defendant knew, or should have known, the danger attending its unforeseen conduct, it cannot be said, as a matter of law, that he contracted to take the risk of such a result. (*Railway Co. v. Bancord*, 66 Kan. 81, 71 Pac. 253.)

On the general question of contributory negligence the case of *C. R. I. & P. Rly. Co. v. Eversole*, 65 Kan. 857, 69 Pac. 1126, is controlling. The casualty under consideration is a duplication, in all essential respects, of the one there described. The defendant attempts to make a distinction between them by claiming that the couplers did not pass by in this as they did in the Eversole case. The record, however, is otherwise. On direct examination the plaintiff testified :

"Ques. Where was your foot—between the lip of the moving car and the knuckle of the other car? Ans. Yes, sir.

"Q. Where did the draw-bar and the knuckle that was closed on it of the moving car finally stop against the draw-bar on the car standing still? A. Right in this position in here.

"Q. *Did it slip by?* A. *Yes, sir;* it throwed this draw-bar away over.

"Q. Which way—from you or toward you? A. From me ; it went away over from me."

It is true that before the accident occurred the plaintiff attempted to adjust the draw-bar by hand and found it would not stay in position ; but mere knowledge of a defect does not bar recovery. To establish

negligence *per se* the danger of using the imperfect appliance must be so great and so apparent that a person of ordinary prudence would not encounter it. Only after the plaintiff's foot had been caught and held did he discover the possibility of the draw-bar's being thrown so far to one side by the impact of the car that it would pass by the knuckle of the draw-bar on the other car instead of meeting it face to face.

The propriety of the plaintiff's use of his foot to push the draw-bar into place was a question of fact for the triers of fact, and not a question of law for the court. The defective car was moving so slowly that the plaintiff had ample time to adjust himself to meet its approach in safety. The engine was disconnected and he had nothing to fear from any sudden or unexpected impulse which might be given to the car. With respect to the method of assisting couplings the plaintiff testified :

"Q. How did you assist? A. Assisted in adjusting the draw-bars to the center of the car so that they may make.

"Q. Well, how did you do that? How did you proceed about it? A. Used my hand or my foot, whichever came handiest to do that work, to shove them over."

There was no rule of the company governing the conduct of its brakemen with respect to coupling cars whose draw-bars might be out of line. The plaintiff did not know, and was not bound to anticipate, that the draw-heads would pass each other, and it is only on the assumption that no man of ordinary prudence would have used his foot to control the refractory bar that plaintiff could be declared to be negligent, as a matter of law. This assumption the district court was not warranted in making.

There was evidence that draw-bars were sometimes

wedged into place by pieces of wood or stones or cinders, if any were at hand.  The law is plain that a plaintiff may not recover for injuries resulting from his voluntary choice of an unsafe method of doing his work when a safe one was open to him.  (*Carrier v. Railway Co.*, 61 Kan. 447, 59 Pac. 1075.)  But to be unsafe a method must be such that a reasonably prudent man would not, under all the circumstances, adopt it.  The question must always be finally resolved with reference to that standard.  If several ways be open and one of them be such that a reasonably prudent man would choose it, no negligence can be imputed to the choice, even if all the others be absolutely safe.  In this case the plaintiff might have allowed the cars to meet and rebound and, after they had come to rest, he might have blocked the draw-bar and waited for the engine to return to make the coupling; then he would not have been injured.  Or he might have refused to couple the car until it had been repaired, or he might have left the service of the company; then he would not have been injured.  But if a reasonably prudent man would have attempted to make the coupling, and if in doing so such a man would have used his foot in a particular way, the plaintiff could follow the same course and not be negligent; and unless he were guilty of negligence he may recover, the elements of a cause of action in his favor being proved.

The district court having undertaken to determine, as matters of law, questions of fact which should have been submitted to the jury, its judgment is reversed, and the cause is remanded with direction to grant the plaintiff a new trial.

All the Justices concurring.