W. E. WELLS, *Appellee,* v. SWIFT & COMPANY, *Appellant.*

No. 17,660.

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Rotary Boring Machine—Lever Valve without Safety Device.* In a personal-injury case the petition alleged that the plaintiff was injured by the unexpected starting up of a rotary motor, driven by compressed air, caused by the opening of a lever valve in a double connection attached to a movable hose; the mechanism was described and negligence was charged in that the valve was defective. The jury returned a verdict for the plaintiff and found specially that the defendant's negligence consisted in using a valve without a locking or, safety device, and that they did not know what caused the valve to open. *Held:*

(1) ———— *Averments of Petition Sufficiently Specific.* Although the petition was attacked for indefiniteness with respect to the allegation of negligence, no substantial prejudice resulted to the defendant from the want of more specific averments.

(2) ———— *Plaintiff's Conduct Not Fatal to Recovery.* The fact that a screw valve was provided at another point by which the plaintiff could have cut off the compressed air is not fatal to his recovery, since to have used that valve would have cut the air off from another machine as well as from that which he was using.

(3) ———— *Findings of Jury Sufficiently Definite and Verdict Sustained.* Although the jury were unable to say in what manner the valve was opened, their verdict is sustained on the ground that it was a fair question for their determination whether, under all the conditions shown, it was negligence to use a lever valve without a locking device, in a situation such that it might in various ways be accidently opened.

(4) —— *Admission of Opinion Evidence — Not Sufficient Ground for Reversal.* The admission of opinion evidence that the valve, when used in the situation described, was unsafe is not sufficient ground for the reversal of the judgment, even if erroneous, as it does not seem probable that the verdict was affected by it, there having been competent evidence from which the jury could draw the same conclusion.

(5) —— *No Error Justifying a Reversal Shown.* Upon the entire record no error is shown which justifies a reversal.

Appeal from Wyandotte court of common pleas. Opinion filed July 5, 1913. Affirmed.

*C. Angevine, J. K. Cubbison,* and *William G. Holt,* all of Kansas City, for the appellant.

*James F. Getty,* of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: W. E. Wells recovered a judgment against Swift & Company, a corporation, for personal injuries received while in its employ, and it appeals.

The plaintiff had been cleaning the flues of a boiler, using for the purpose a rotary boring machine, made of steel, about ten inches long and four inches in diameter, operated on the turbine principle, by compressed air. The air was brought from the compressor in the engine room to the boiler room by an iron pipe. To this pipe was attached a piece of inch hose twelve or fifteen feet long. The end of this hose was coupled to the middle of an iron double connection, or "T," weighing about twelve pounds, to each arm of which another piece of hose was attached, about twenty-five feet long. At the end of one of these pieces of hose was the boring apparatus operated by the plaintiff; at the end of the other was a somewhat similar device, used for smoothing and grinding the ends of the flues. At the point where the single hose connected with the iron pipe containing the compressed air was a screw valve for turning it on and cutting it off. On each arm of the

"T" was a quick-action "gate" or lever valve, regulating the supply of air to each of the pieces of hose to which the turbines were attached. The plaintiff while cleaning the flues stood upon a platform about six feet high and twelve by fifteen feet in size. Having completed his work, he shut off the air from the hose he was using by turning the lever of the valve at the "T" or double connection. He then undertook to disconnect the boring apparatus from the hose. While he was doing so, in some way the lever valve was opened, and the boring machine began to run. It fell from his hands and the cutting edge of the revolving cylinder struck his leg, inflicting the injuries on account of which he sued.

The petition alleged two grounds of negligence—(1) defective ventilation by which the boiler room was permitted to fill with steam, so that vision was obscured, and (2) defective construction of the valve. The jury found that the room was filled with steam, so that the plaintiff's view was obstructed, but that the defendant's negligence consisted in the defective construction of the double connection, in that the valves had no lock or safety device. The trial court overruled a motion to make the petition more definite by stating specifically what acts of negligence caused the injury. The ruling is complained of. The petition described the manner in which the air supply was furnished and regulated, alleged that the valves at the "T" were "negligently constructed to be operated by a lever," and added that "said double connection could be moved from place to place by picking it up or dragging it by means of the hose attached thereto for the purpose of operating the aforesaid appliances, and said valves, when said double connection was so moved, were liable to be opened or shut by the aforesaid levers coming in contact with any hard substance." The defendant maintains that it was difficult to tell whether the plaintiff intended to charge generally that the valve was

negligently constructed, or that the negligent construction consisted in the fact that the valve was operated by a lever. We think the petition is fairly to be interpreted as charging that in view of the surroundings and conditions stated it was negligence to use the kind of a valve described; but in any event it does not appear that any prejudice resulted from a failure to make the charge more specific. There was no express allegation in the petition that there should have been a lock or safety device on the lever, but this was implied from the statement that the valve was capable of being opened or shut by an accidental blow.

The defendants argue that even if there had been a lock upon the lever valve it is reasonable to infer that the plaintiff would not have used it, because he did not use the screw valve referred to. This screw valve regulated the supply of air to both machines. The plaintiff used the valve which cut off the air from the machine he was using, without interfering with the operation of the other. This consideration prevents the act of the plaintiff in this regard from amounting to contributory negligence. An instruction was asked and refused to the effect that if the plaintiff had been directed to use the screw valve to shut off the air from the machine he was operating he could not recover. The refusal of the instruction is rendered immaterial by the fact that the jury found that no such direction had been given.

Witnesses were allowed to testify that the valve was not safe. This is assigned as error. Such evidence is admissible where it relates to machines so complicated that the grounds of the opinion can not be fully exhibited to the jury. (*King v. King,* 79 Kan. 584, 100 Pac. 503.) Whether or not the case falls within that rule, no serious prejudice could have resulted, for all the facts were fully brought out, and whether the device was safe was a fair question for the jury. The judgment in the recent case of *Root v. Packing Co.,*

88 Kan. 413, 129 Pac. 147, was not reversed merely because a witness was erroneously permitted to give his opinion as to the safety of a device, but because there was no other evidence on the subject to support the verdict. Evidence as to the action of another valve, said to be of the same sort, was objected to, but the objection seems to affect its weight rather than its competence.

The defendant argues that it was not obliged to furnish any particular form of mechanism, or the latest and best devices. But we do not find that the judgment rests on any contradiction of that rule.

It is contended that even if the machinery was defective the plaintiff can not recover because he assumed the risk. In order for this principle to apply it is not enough that an employee should know the physical facts regarding the mechanism from which he receives an injury; he must also know, or be under an obligation to know, of the danger to which he is subjected. (*Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253; *Brinkmeier v. Railway Co.,* 69 Kan. 738, 77 Pac. 586; 4 Thompson, Commentaries on the Law of Negligence, § 4652.) The plaintiff testified that he had seen the valve, but had not examined it closely; that he had had considerable experience in cleaning boilers, but was not positive whether or not he had used this particular contrivance before. It can not be said, as a matter of law, that he knew or ought to have known of the danger to which he was subjected. It was competent for the jury to find that the plaintiff did not know, and from want of experience was not reasonably to be expected to know, of the danger, but that it was the duty of the defendant to know of it from the obligation the law places upon an employer with respect to appliances furnished for the use of employees. (*King v. King,* 79 Kan. 584, 100 Pac. 503.) The jury returned an affirmative answer to a question thus worded: "Was not the plaintiff an experienced boiler

cleaner and perfectly familiar, before he was injured, with the stationary air line and air-line hose and the lever valve in question, and the turbine flue cleaner, and fully competent to do the work he was doing at the time he was injured?" In view of the compound and involved character of the question the answer does not necessarily imply that the plaintiff knew the details of the construction of the valve, or that he knew or ought to have known of the danger resulting from its use.

The more important special findings were the following:

"Q. Is it not a fact that there was no fog of steam in the room where the plaintiff was working at the moment he claims to have been injured? A. No; there was steam.

"Q. If you find that there was a fog of steam in the boiler room, what had that to do with causing the plaintiff's injuries? A. Obstruct his view.

"Q. If you find that the defendant was guilty of any negligence, state of what such negligence consisted, giving full particulars thereof? A. Defective construction of double connection, with valves without locks, and not being stationary located.

"Q. If you find that the lever valve in question was negligently constructed, state in what particular it was negligently constructed? A. Absence of lock or safety device.

"Q. What caused the lever valve in question to be opened at the time the plaintiff was injured? A. Don't know.

"Q. Is it not a fact that the plaintiff and defendant were equally competent to judge of the risks and hazards of the plaintiff's employment, and did both of them have equal knowledge of the surroundings and construction of the lever valve in question? A. No.

"Q. If you find that the plaintiff did not have equal knowledge of the surroundings with the defendant, state in what particular he did not have such knowledge. A. Not being qualified.

"Q. If you find that the plaintiff was not as competent to judge of the risks and hazards of his employment as the defendant, state in what particular he was

not competent to judge of such risks and hazards. A. Not qualified."

We think these findings support the verdict. They show that the jury took substantially this view of the matter: The fact that the room was filled with steam did not of itself constitute negligence, but it was one of the conditions the employer was bound to take into account in providing appliances for use in the boiler room. It is not possible to say just how the valve was opened, whether by some one accidentally hitting the lever, or stumbling over the hose, or by the action of the air. But the defendant should have anticipated that an easily acting lever valve, attached to a movable hose, might be accidentally opened in a variety of ways, and that the starting up of the boring machine so occasioned would be dangerous to the employees. Therefore it ought, in the exercise of reasonable diligence, to have provided a lock or safety device to prevent such accidental opening of the valve. The plaintiff was not sufficiently experienced or skillful to enable him to realize the risk to which he was exposed by the use of a valve without a locking device.

To several of the questions submitted the jury merely responded—"Don't know." Complaint is made of the refusal of the court to require more definite answers. We do not find any of the questions to be of such importance that a new trial should be ordered for want of answers to them, assuming that they could have been required.

The judgment is affirmed.