## Wiley v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided November 27, 1914.)

### Appeal from Fayette Circuit Court.

1. **Master and Servant—Contributory Negligence Defined.**—The con-
   tributory negligence that will deny a recovery arises when the

servant fails to exercise such care for his own safety as a person
of ordinary prudence would exercise under similar circumstances.
Generally speaking, the question is for the jury, but this is only
so when the evidence presents a state of facts about which there
might be difference of opinion in the minds of reasonably fair-
minded men.

2.  Master and Servant—Assumed Risk Defined.—When an experi-
enced servant voluntarily exposes himself to an open danger, he
assumes the risk that may follow from his act, in the absence of
special circumstances that may take it out of the general rule.

3.  Master and Servant—When Question of Liability of Master May
Be Raised by Demurrer.—When the facts stated in the petition
show either that the plaintiff was guilty of such contributory negli-
gence as would defeat a recovery, or that he assumed the risk
of the injury that happened to him, the plaintiff's right of recov-
ery may be determined by a demurrer.

4.  Master and Servant—Brakeman—Injury to While Coupling Cars.
—Where an experienced brakeman, after he had failed to do so
with his hand, undertook to make a coupling with the aid of his
foot, when he knew the coupling apparatus was so defective that
a coupling could not be made under ordinary circumstances, and
his foot was injured in the operation, he was not entitled to
recover damages.

ROBT. B. FRANKLIN and ROBT. C. TALBOTT for appellant.

R. A. THORNTON and JOHN GALVIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, who will be called the plaintiff, brought
this suit against the appellee as defendant to recover
damages for personal injuries sustained, as he averred,
on account of its negligence. When he sustained the in-
juries complained of he was attempting to make a coup-
ling with his foot, which slipped and caught in the
coupling.

The lower court sustained a demurrer to the petition
as amended, so that the only question for our decision
is, did the pleading state a cause of action?

The petition averred that the plaintiff was in the
employment of the defendant as a yard brakeman or
switchman, and while in the discharge of his duties in the
yard at Lexington undertook to couple one of the defend-
ant's engines to a freight car standing on a track in the
yard "by the use of couplers designed to be automatic,
consisting of draw-bars on the said engine and car,
which were intended to be in line with each other and to
come together and fit one into the other and to fasten

together automatically when brought together by the engine backing up to said car; that the defendant negligently and carelessly failed to furnish the plaintiff couplers and draw-bars suited and fit for coupling automatically said engine and said car; that the couplers and draw-bars aforesaid were unsuited and unfit for the purpose of coupling automatically said engine to said car, because the draw-bar on the engine was out of line laterally and hard to get in line with the draw-bar on the car, so that the said draw-bar did not and would not meet in such manner as to couple automatically when said engine backed up to said car; that the said draw-bars could not couple until the draw-bar on the engine was pushed in line with the draw-bar on the car; that said draw-bar on the engine was hard to push in line with the draw-bar on the car, so that the draw-bars could and would couple automatically when said engine backed up to said car; that the draw-bar on the engine required the use of much force on the part of the plaintiff to get it in line with the draw-bar on the car, so that the said engine and car could and would couple, whereas suitable and fit draw-bars are easily pushed in line with each other when out of line; that the defendant knew, or, with the exercise of ordinary care, could have known, that the said couplers and draw-bars were unsuited and unfit to couple automatically said engine to said car, and of the condition of the draw-bar on said engine in time to have avoided the injury to plaintiff herein complained of, by the exercise of ordinary care; that, in order to effect a coupling when the defendant's agents and servants backed said engine up to said car to be coupled therewith, and in order to enable them to couple, the plaintiff first endeavored to get the draw-bar on the engine in line by the use of his hands, but was unable so to do, and, having no other means to get the said draw-bar on the engine in line, the plaintiff pushed the draw-bar on the engine from its lateral position to a straight position, or in line, with his foot, without realizing and without knowing the danger of pushing the said draw-bar in line with his foot, and while using ordinary care for his own safety, his foot slipped and was caught in and between the knuckles and jaws of the said draw-bars and crushed."

In the amended petition it was averred that "there was no rule of the defendant company known to the plaintiff governing the conduct of its brakemen with

respect to coupling cars whose draw-bars might be out of line, or forbidding the use of the foot in pushing the draw-bars into line, and, if there was, in fact, any rule forbidding the use of the foot therefor, it was habitually, and with the knowledge of the company, ignored by its brakemen before and at the time of the injuries herein complained of, and that before and at the time of the injuries herein complained of it was the common practice of the brakemen of the defendant company, and well known and acquiesced in by their superiors, to use the foot in pushing the draw-bars in line as the plaintiff undertook to do on the occasion set out in the petition. That the draw-bar on the engine was defective in being and staying out of line and defective in being difficult to push into line; that the said draw-bar on the engine was unsuited for coupling said engine to a car in that the draw-bar was out of line and in that the draw-bar required much force to push it into line; that while the plaintiff saw that the draw-bar was out of line, he did not know or realize the amount of force necessary to push it into line, and because of the great and unexpected resistance of the draw-bar, the force which he exercised through his foot, and which ordinarily would have moved the draw-bar into line, caused his foot to glance off and slip and be caught. That the plaintiff did not know or anticipate that the draw-bar would offer such resistance as it did, or that the force applied to it would result in his foot slipping rather than moving the draw-bar into line; that the plaintiff at the time was exercising ordinary care for his own safety and following a practice known and acquiesced in by the company.''

The suit was brought under the State law and not the Federal Employers' Liability Statute, and evidently it was the purpose of the draftsman of the petition to state fairly the facts that could be proven by the plaintiff, so that, if the facts stated did not constitute a cause of action, the question might be determined by a demurrer to the pleading, thus avoiding the necessity of a trial that might result in a directed verdict for the defendant, if the evidence established a state of facts such as were set out in the petition.

The plaintiff, as we must assume, was an experienced switchman. He knew the hazard attending the coupling of cars, and was fully acquainted with the manner in which couplings were made and the machinery used in the operation. Before attempting to use his foot, he **not**

only discovered that the draw-bars were out of line and would not couple automatically as they should have done, but he also knew that it would require considerable force to put them in line, because he tried to get them in line with his hands and failed to do so.

He averred that it was customary for switchmen to use their feet in making couplings as he was attempting to do, and that he did not realize the danger of pushing the draw-bar in line with his foot. But, being an experienced brakeman, he could not help but realize the danger of making a coupling with his foot. There was no emergency, no hurry, no orders or directions to make the coupling quickly; nor is it claimed that any of his superiors were present when the coupling was made, or that he received any directions to make the coupling with his foot, or, indeed, to make it at all, except, of course, that his duties required him to make the coupling. But his duties did not require him to expose himself to this unnecessary danger or to take the risk of injury involved in this attempt to couple the cars with his foot.

In disposing of this case we have had some difficulty in determining whether the ruling of the lower court in sustaining the demurrer should be sustained upon the ground that the plaintiff was guilty of such contributory negligence as would defeat a recovery, or put upon the ground that he assumed the risk incident to the operation of attempting to make the coupling with his foot.

Although contributory negligence and assumed risk are well-known terms in the law of master and servant, and generally treated by text writers as distinct defenses, they are often used interchangeably in cases presenting a state of facts that leaves little room to decide distinctly whether the case should be ruled by the law applicable to one or the other of these defenses, and this case furnishes a good example of the class in which it is doubtful whether the injured and complaining party was guilty of contributory negligence or assumed the risk. An interesting case on this subject is Sea Board Air Line Ry. Co. v. James T. Horton, 233 U. S., 492, 58 Law Ed.,

---

In view of this condition, it would, perhaps, be well to treat the case as if both of these defenses would be available to defeat a recovery.

In the law of master and servant contributory negligence that will deny a recovery arises when the servant fails to exercise such care for his own safety as a person

of ordinary prudence would exercise under similar circumstances, and it appears that the injury would not have happened except for his own negligence. Ashland Coal & Iron Co. v. Wallace, 101 Ky., 626; Meade v. Ashland Steel Co., 125 Ky., 114.

Generally speaking, the question of contributory negligence is for the jury, but this is so only when the evidence presents a state of facts about which there might be difference of opinion in the minds of reasonably fairminded men. If there is no room for reasonable difference of opinion that the plaintiff brought the injury upon himself by his own negligence, there can, of course, be no recovery, although the defendant was also negligent. Here the plaintiff states the facts constituting the contributory negligence of which he was guilty, and if these facts show that his own conduct was the proximate cause of the injury, or, in other words, show that the injury would not have happened except for his contributory negligence, the same obstacle is presented in the way of his recovery as would be presented if he had failed to state facts showing negligence on the part of the defendant.

When the defense of contributory negligence is interposed by the defendant and established by the evidence, or when, as in this case, it is disclosed by the petition, the negligence of the defendant will not warrant a recovery, and this for the reason that the injury was not directly attributable to its negligence, but to the negligence of the plaintiff.

The employer is under a duty to exericse ordinary care to furnish reasonably safe appliances for his employes to work with, and, if while exercising ordinary care for their own safety, they are injured by his failure to perform this duty, a cause of action arises in their behalf to recover damages for the breach of duty. But when the employe fails to exercise ordinary care for his own safety and is injured as a direct result of his own negligence or want of care, rather than on account of the negligence of his employer, he must take the consequences brought on by himself.

It is very true that the plaintiff states that he was exercising ordinary care for his own safety, but this averment must be read in connection with the other averments, which show, as we think, conclusively that he was not exercising ordinary care for his own safety. The pleading must be read and construed as a whole. Iso-

lated parts of it cannot be selected either for the purpose
of imposing liability on the defendant or for the purpose
of showing a right of recovery in the plaintiff, and, when
read as a whole, our conclusion is that the plaintiff shows
himself not entitled to maintain the action.

After a somewhat careful examination of the author-
ities, the only case we have found apparently supporting
the views of counsel for the plaintiff is Brinkmeier v.
Missouri Pacific Ry. Co., 69 Kan., 738, 77 Pacific, 587,
which is referred to in brief of counsel. In that case the
court, under a state of facts quite similar to those here
presented, ruled that the case should have gone to the
jury. But the Brinkmeier case stands unsupported by
any other authority so far as we have been able to dis-
cover, and is not in harmony with the rule as laid down
by this court in cases in which the contributory negli-
gence of the plaintiff was deemed sufficient to defeat a
recovery. Elliott on Railroads, Vol. 3, Sec. 1296a;
Thompson on Negligence, Vol 4, Sec. 4728; Sherman &
Redfield on Negligence, Vol. 1, Sec. 207.

If the case should be treated as falling under the
doctrine of assumed risk, we would reach the same re-
sult, as it has been announced by this court in repeated
decisions, that an experienced servant who voluntarily
exposes himself to an open danger assumes the risk that
may follow from his act, in the absence of special circum-
stances that may take it out of the general rule. The
work of coupling cars when the brakeman must go or is
between the cars, as in this case, is notoriously hazard-
ous, and the dangers attending it are alarmingly in-
creased when there are defects in the coupling ma-
chinery, as there was in this instance. Confronted by
this obviously dangerous condition, the plaintiff, an ex-
perienced man, undertook, in the ordinary course of his
business, to make the coupling in the manner we have
stated, and in so doing, we think, assumed the risk of any
injury that might happen to him. Arnold v. Louisville
& Nashville R. R. Co., 22 Ky. L. R., 511; Avery & Sons
v. Lung, 32 Ky. L. R., 702; Foreman v. L. & N. R. R. Co.,
142 Ky., 63; Cincinnati, New Orleans & Texas Pacific
Ry. Co. v. Skinner, 143 Ky., 342.

We think the trial court correctly ruled that the peti-
tion as amended failed to state a cause of action, and the
judgment is affirmed.