## Hines, Director General of Railroads, Etc. v. May.

(Decided May 13, 1921.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Appeal and Error—New Trial.—It is only substantial and material errors prejudicially affecting the rights of appellant that will authorize a reversal of the judgment appealed from and, while some of the matters complained of in this case (as shown in the opinion) may be technical errors, they are not sufficiently material or prejudicial to authorize the granting of a new trial.

2. New Trial.—Misconduct on the part of counsel, either in the examination of witnesses or otherwise occurring, must be such conduct as unerringly points to a settled determination on the part of the attorney to deceive the court or the jury and to produce a miscarriage of justice, by concealing the facts or by putting forward falsehood or in some other manner to obtain for his client that which the facts would not authorize. No mere trifling incident such as the casual asking of leading questions, or failing to properly frame questions, accompanied by nothing indicating a sinister purpose, will amount to such misconduct as will authorize the court to correct it by granting a new trial.

3. Trial—Maps and Documents—Evidence.—Official maps and documents, unlike private ones, need not be shown to be correct by the testimony of the one who made them, since it will be presumed that the officer who made them performed his duty and made them accurately.

4. Railroads—Presence of Persons on Tracks.—Where the testimony upon any contested issue is such that but one conclusion may be fairly drawn from it, it is the duty of the court to decide the issue as a matter of law and to conduct the trial accordingly; so that the court in this case properly held that the testimony showed the use of a railroad track at the point of the accident by a sufficient number of people to require those operating trains to anticipate their presence and to take such precautionary measures to prevent injuring them as are imposed by law under such circumstances.

5. Appeal and Error—Instructions.—Instructions given and offered examined in the opinion and held that the court committed no error in giving or refusing any of them.

6. Appeal and Error—Reversal—Evidence.—Conceding that certain complained of evidence is erroneous and, further, that it was so

much so as to prejudicially affect appellant's rights, still a reversal will not be ordered where the evidence was directed to a particular issue determined by the jury and of which particular determination there is no complaint made on appeal; hence, no improperly admitted evidence looking to the extent of damages will authorize a reversal where the size of the verdict is not complained of.

BENJAMIN D. WARFIELD and MOORMAN & WOODWARD for appellant.

BLAKEY, DAVIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The tracks of the Louisville & Nashville Railroad Company in the city of Louisville, going from Kentucky street to Breckinridge street, both of which it crosses at practically right angles, runs north and south and parallels Underhill street on the east and Logan street on the west. Between Kentucky and Breckinridge streets it crosses Bear Grass creek, over which there is a concrete bridge with a smooth plank floor and at the sides are walks with railings. Along that right of way there are some factories, and perhaps some residences, and there are other residences facing Underhill and Logan streets with the lots abutting the railroad right of way at the rear of them. Somewhere near 8:30 a. m., on May 13, 1918, the appellee and plaintiff below, Lewis F. May, who was about 50 years of age, was walking north from the bridge spanning Bear Grass creek, and when he reached a point about 51 feet from the north end of that bridge he was struck by a passenger train and was knocked a considerable distance and sustained various injuries to his body, to recover for which he filed this suit, originally against the Louisville & Nashville Railroad Company, but the director general of railroads was later substituted as a defendant.

It was alleged in the petition that the place where plaintiff was injured was one so habitually used by a sufficient number of people during the day, including the hour of the happening of the injury, as to impose upon those operating trains the duty of anticipating the presence of persons upon the track and to take such precautionary measures to warn persons on the track and to prevent injury to them as are imposed by law under such conditions and that the servants of defendant in operat-

ing the particular train in question failed to take such precautions or to perform such duties. There was also a general charge of negligence and carelessness on the part of the operators of the train, by reason of all of which plaintiff sustained his injuries and he sought to recover a judgment against defendant for the sum of $20,830.00. The answer controverted the allegations of the petition, especially the acts of negligence alleged therein, and affirmatively pleaded in another paragraph contributory negligence on the part of plaintiff, which was denied by reply, thus making the issues. Upon trial there was a verdict in favor of plaintiff for the sum of $5,000.00, upon which judgment was rendered and defendant's motion for a new trial was overruled, followed by the prosecution of this appeal.

In the motion for a new trial eight separate grounds are set out and relied on, but none of them are argued upon this appeal except, (1) incompetent evidence introduced by plaintiff over the objections of defendant; (2) misconduct of counsel in interrogating witnesses, and (3) error of the court in giving and in refusing instructions. There is no complaint about the size of the verdict.

1. A large portion of the brief of learned counsel for defendant is taken up in the discussion of a number of items of alleged incompetent testimony, some of which we regard as extremely technical as well as immaterial and we will, therefore, refer to only such of them as we consider are the more important ones, and which will serve to illustrate the insufficiency of this general ground of complaint against the verdict. It is first insisted (a), that the court erred in permitting plaintiff to answer that no one had warned him to keep off the track at the place where he was injured, but in examining the record we fail to find any objection to this testimony, and though we should assume for the sake of argument that it was technically erroneous, as we think it was, and that it was sufficiently prejudicial to authorize a reversal (which we think it was not), it cannot be considered on this appeal because of the failure to object to its introduction. It is next insisted (b), that questions asked some of the witnesses for the purpose of eliciting the extent of the use of the track were improperly framed in that they inquired of the witnesses the extent of the use of the track "by the general public." As we gather from the record the question was so framed only as to two or three of the ten

witnesses who testified upon that issue and even their testimony as a whole convinces us that in making their answers they regarded the term "general public" as synonymous with a large number of people who used the track as a walk-way between Kentucky and Breckinridge streets, which included the place where the accident occurred, and we are thoroughly convinced that if it should be held that the questions were not framed with technical accuracy no prejudicial effect resulted therefrom. Again it is insisted (c), that Dr. Kelsall, a witness introduced in behalf of plaintiff, was improperly allowed to say that an apparent lung or throat trouble with which plaintiff was suffering at the time of the trial, and from the date of the accident, was, according to his opinion, produced by the accident and, it is insisted, that the same witness was permitted to state his opinion as to the truthfulness of certain statements which plaintiff had made to him. The record does not bear out the latter complaint, since the court declined to permit the witness to answer the question but did permit him to answer that in his opinion the apparent lung trouble resulted from the accident. We do not find here any departure from the usual rules of practice and besides, as we have stated, there is no complaint made about the size of the verdict and, therefore, if the testimony was erroneous and prejudicial the objection to it could not be made effectual on this appeal for the manifest reason that there is no objection to that part of the verdict of the jury to which it was directed. Objection was also made (d), to the introduction of a memorandum containing certain measurements and distances which had been taken by plaintiff, but transcribed on the memorandum by his attorney, and which plaintiff read and verified as being correct and the truth of which he adopted as though the memorandum had been made by himself. Under these circumstances we fail to grasp the force of the objection to the complained of testimony. Another objection under this ground is (e), that the court erred in permitting the city assessor to introduce the official maps of the city showing Kentucky and Breckinridge streets and the right of way and the tracks of defendant between them because, as insisted, the one who made the maps did not testify as to their accuracy. In support of this objection the cases of Hays v. Ison, 24 Ky. L. R. 1947; Ligon v. Allen, 157 Ky. 101, and C. N. O. & T. P. R. R. Co. v. Noland, 161 Ky. 205, are cited and relied on.

The condemned testimony in the Hays case was a private map the verity of which was not established, and in the other two cases referred to the testimony objected to was unverified photographs, which also had a private origin. None of the testimony in either of the cases were public documents or records which were officially made and kept for the purpose of preserving the facts appearing upon them.   In the latter case there is a presumption that such public records and documents correctly represent the facts and that the officer who prepared them, and whose duty it was to make them accurate, properly performed his duty.   Wigmore on Evidence, section 1632; 22 Corpus Juris, pages 812 and 814, and 10 R. C. L. 1127.   Following this rule, it is the constant practice to introduce such public records without first verifying their accuracy by the one who made them.   Aside, however, from the foregoing statement, the only objection urged against the introduction of the maps was that they did not show the curvature of the railroad track between Kentucky and Breckinridge streets as it actually exists and as it is shown by some photographs also introduced; but we think counsel is mistaken in this, since our examination of the maps (which have been brought to this court with the record), shows practically the same curvature in the right of way of the defendant, between the streets mentioned, as is shown by the other testimony in the case and we cannot, therefore, conceive of any prejudicial effect growing out of the introduction of the maps, even if it be conceded that they were erroneously introduced.   It is furthermore seriously insisted (f), that the court erred in allowing counsel to ask plaintiff if he was sober upon the occasion in question.   Perhaps it was improper for counsel to ask this anticipatory question, but we are wholly unable to see, in the light of the entire record, wherein it operated to the substantial prejudice of the defendant.   We are informed, however, by brief for plaintiff that defendant had taken the depositions of some of the witnesses who testified orally at the trial and whose depositions were not read, and in those depositions inquiry was made as to whether plaintiff was sober upon the occasion in question, and in anticipation that defendant would raise that issue the fact was inquired about while plaintiff was giving his testimony in chief. This explanation of plaintiff's counsel is not denied by defendant in his reply brief and we feel that we are au-

thorized to assume that it was true and, so doing, we conclude that no prejudicial error was committed in this particular matter complained of.

2. What has been said in disposing of ground (1) above practically disposes of ground (2), for it is based on the alleged misconduct of counsel in framing the questions and in eliciting the testimony complained of thereunder. Whatever may be the true rule limiting the privilege of counsel in the conduct of a trial it certainly cannot be said that the matters herein complained of transgress that rule; for, if every minor and casual error committed by counsel in the examination of witnesses, growing out of the leading nature of a few questions and of inaccuracies in framing them, could be characterized as *misconduct,* sufficient to authorize the granting of a new trial, no case would ever reach the point of finality. It is only where the conduct of counsel so widely departs from the adopted rules of practice as to indicate a design and purpose to deceive and to create a miscarriage of justice, and to obtain benefits for his client which the actual facts would not warrant, by pursuing some undue course amounting to or closely approaching corruption, that will stamp his actions as *legal misconduct,* for which a new trial will be granted. None of the acts of plaintiff's counsel, complained of under this ground, remotely approaches the definition given and are not sufficient to warrant a reversal of the judgment therefor.

3. Under this ground, relating to errors in giving and in refusing instructions, complaint is made of instruction No. 1, given by the court on its own motion, and the refusal of the court to give instructions W and O, offered by defendant. The chief complaint to instruction No. 1 is that the court therein assumed as a fact, established by the testimony, that the place where plaintiff was injured was used by a sufficient number of people as a walk-way so as to impose the duty upon the servants of the defendant operating trains to anticipate their presence, to keep a lookout ahead, to regulate the speed of the train, to give signals of its approach, and to take other necessary precautions imposed upon railroad companies under such circumstances. It is argued in support of this criticism of the instruction that the question as to whether a railroad track at a particular time and place is used to the extent indicated, so as to impose the duties mentioned, is one to be determined by the jury from the

evidence under appropriate instructions, and in support of the argument the cases of L. & N. R. R. Co. v. Mc-Nary's Admr., 128 Ky. 408; C. N. O. & T. P. R. R. Co. v. Harrigan's Admrx., 149 Ky. 53; Carter, Admr., v. C. N. O. & T. P. R. R. Co., 150 Ky. 525; Southern Ry. Co. in Kentucky v. Sanders, 154 Ky. 421; Corder's Admr. v. C. N. O. & T. P. R. R. Co., 155 Ky. 536, and C. N. O. & T. P. R. R. Co. v. Blankenship, 157 Ky. 699, are cited and relied on. In some of those cases the question was submitted to the jury and there was a verdict for plaintiff, and the only question determined on the appeal was whether there was sufficient testimony in the case (as to the character of the use of the track) to authorize a submission of that issue to the jury, or whether the court should have found the fact to be that the evidence was insufficient for that purpose and, therefore, should have given a peremptory instruction for defendant. In some of the cases the court pursued the latter course and it was held on appeal that there was sufficient evidence to authorize a submission of the issue to the jury and reversed the judgment and directed such submission upon another trial. Numerous cases could be found where the court rightfully held as a matter of law that the facts were insufficient for the submission of the issue and directed the jury accordingly. Those cases are sufficient to illustrate the point that whether the use of the track is such as to impose the precautionary duties on the operators of train is not one *always* for the determination of the jury, but that if the evidence is such that but one reasonable conclusion can fairly be reached it is the duty of the court to adopt that conclusion as a proven fact and to instruct the jury from that standpoint. The practice for the determination of the issue here involved is analogous to and governed by the same rule as is applied in the determination of the defense of contributory negligence. As is well known, that defense is generally to be submitted to the jury, but where the testimony is such that "but one conclusion may fairly be drawn therefrom, the court may pass upon it as a matter of law," and conduct the trial accordingly. City of Owensboro v. Winfrey, 191 Ky. 106; Wiley v. C. N. O. & T. P. R. R. Co., 161 Ky. 305, Hayden v. C. M. & G. R. Co., 160 Ky. 836, and cases referred to therein. There was before this court, however, in the case of L. & N. R. R. Co. v. Cook, 128 S. W. 81, (not elsewhere reported) the duty of the court in determining as a matter of law

the use of the track as a walk-way by the people, in the same kind of case as this one and where the evidence on that issue was substantially the same as it is here. The accident there occurred in the city of Covington and the defendant introduced no testimony as to the use of the track, as is true here, and the opinion held that the court was justified in assuming as a matter of law that the conditions existed requiring those in charge of the train to anticipate the presence of persons on the track and to take the legal precautionary measures for their safety. We are therefore constrained to conclude that the court did not err, in the light of the testimony in the record, in deciding as a matter of law that the use of the railroad track at the time and place of the accident by a great number of people was, and had been, such for a long time prior thereto, and to such extent as to impose upon the operators of the train the duty of anticipating persons upon the track; the testimony here differentiating this case from those cited and relied on by counsel for defendant.

The plaintiff introduced about ten witnesses to prove the extent of the use of the track by people generally and especially those living and working in the vicinity thereof. Aside from its being a populous community those witnesses testified that at all hours of the day the tracks were used by a great number of people travelling up and down them, some of whom were school children who travelled at about the same hour of the day that the accident to plaintiff occurred. They vary in their testimony and say that from about 250 to 1,000 persons use the track in the manner indicated. We do not agree with counsel that any witness fixed the number as low as 25, since the witness referred to by counsel stated that he had seen that number using the track at one time, but he did not pretend to limit the travel throughout the day to that number. It is likewise true that the greater amount of travel is about 7 o'clock in the morning, at the noon hour, and at the close of the day's work, but the testimony as a whole leaves no doubt in the mind but that at other hours of the day the track is likewise used by a large number of people."

Under this head it is also insisted that the court erred in failing to give to the jury instruction W, offered by defendant, which it insists was a concrete one to which it was entitled under the testimony given by the engineer.

He said that he first saw plaintiff about the time the engine reached Kentucky street, 250 feet south of where plaintiff was struck; that the bell was rung and prior signals had been given, and at that time plaintiff was walking in the center of the track between the rails (which is denied by plaintiff) when an alarm signal was given and plaintiff went from the center of the track to the ends of the ties outside of the rail and he (the witness) believed that plaintiff was going off of the track to a place of safety, and that he then released his brakes which were applied when he first saw plaintiff's position; that plaintiff instead of going off of the track continued to walk on the ties and that he then tried to stop the train but was unable to do so.   Instruction W, offered by defendant, is in these words: ''The jury are instructed that if the agents of the defendant in charge of the train which injured the plaintiff were giving timely and reasonable warnings by the ringing of the bell and the blowing of the whistle or other reasonable warning, of the approach of the train to the place where the plaintiff was injured, and if at said time the plaintiff was walking between the railway tracks and stepped therefrom and started off the track the defendant was not required to anticipate that the plaintiff would step in a position of peril but had a right to assume that he was aware of the approach of the train and would keep out of danger and if the jury shall believe from the evidence that the plaintiff stopped or changed his course after starting to leave the track in front of the approaching train so as to place himself in a position to be struck by it in passing and was struck or run over by said train the jury will find a verdict for the defendant.''   Conceding that plaintiff was entitled to a concrete instruction presenting its defense, the one offered was erroneous in that it failed to set out the duty of the engineer after he discovered that plaintiff was not going to a place of safety.   But, it is our conclusion that instruction 2, given by the court on its own motion, sufficiently presented in concrete form the defense contended for.   That instruction says: ''If you believe from the evidence that the engineer gave reasonable and timely warning to the plaintiff, May, then it was not the duty of the engineer to stop his train, but he had a right to assume that May would hear the signal and would leave the track.   If you believe from the evidence that the engineer gave reasonable and timely warning of the approach of his train, you will find for the defendant, unless you be-

lieve from the evidence that after the engineer saw or by the exercise of ordinary care could have seen that May was not going to leave the track he failed to exercise ordinary care, or failed to use the means at his command, to stop the train, and by reason of such failure, if there was any, he struck May, or unless you believe from the evidence that his failure to stop his train after he saw or by ordinary care could have seen that May was not going to leave the track, was due to the excessive rate of speed at which he was running it, if he was so running it." It will thus be seen that this instruction concretely presented the facts as testified to by the engineer and it is not made less concrete by failing to submit the facts which induced the engineer to believe that plaintiff knew of the approach of the train and would seek a place of safety. There was abundant testimony to show that the proper care was not exercised by the engineer after he discovered that plaintiff was not going to change his dangerous position to one of safety, and the finding of the jury that he failed to do so, or that the negligent speed of his train was such that he could not stop in time to prevent the accident, is abundantly sustained by the proven facts and circumstances in the case:

Instruction O, tendered by defendant and refused by the court, told the jury to allow no damages because of the tubercular condition of plaintiff if that condition "was not caused by or directly attributed to the injuries he received," and in support of that instruction the case of Taylor Coal Co. v. Miller, 168 Ky. 719, is relied on. Instruction I, given by the court, authorized the award of damages for only such pain and suffering endured "as a direct result of his injuries," and for the loss of power to earn money "resulting directly from such injuries." Under the doctrine of the case of Central Kentucky Natural Gas Co. v. Salyer, 164 Ky. 718, where a similarly worded instruction was given, we are authorized to assume that the jury did not take into consideration prior existing afflictions; but, however this may be, there was no evidence in this case (as there was in the Taylor case) that there were any afflictions of plaintiff as an element of damages existing prior to the accident sued for. On the contrary, the uncontradicted testimony shows that there existed no symptoms of tuberculosis or other injury to the lungs or throat of plaintiff prior to the accident he sustained, and that he immediately thereafter suffered a

hemorrhage from his lungs or throat, indicating recent injury to those organs. Independently, however, of all that has been said concerning this instruction (O), it looked only to the measurement of damages, of which measurement as fixed by the jury there is no complaint on this appeal. So that, under no view which may be taken of the case can it be said that the court erred in failing to give it to the jury.

Upon the whole case we have failed to find any error sufficiently prejudicial to authorize a reversal of the judgment and it is, therefore, affirmed.