## Illinois Central R. R. Co. v. Holland's Admr.

(Decided April 10, 1912.)

### Appeal from Muhlenberg Circuit Court.

1. Railroads—Death—Damages—Evidence.—In an action by an administrator against a railroad company for the death of his intestate, evidence examined and held sufficient to justify the submission of the case to the jury.

2. Same—Prejudicial Error.—A statement made by the engineer of the train that killed plaintiff's intestate shortly after the accident, even though not properly admitted as a part of the res gestae, is not prejudicial error where the engineer, though denying the statement, admits the facts contained in the statement.

3. Same—Evidence—Jury.—Where it is claimed that plaintiff's intestate was drunk at the time of the accident, it is not error to exclude the testimony of physicians to the effect that a drunken man could not exercise for his own safety the same care that an ordinarily prudent person, if sober, would exercise under the same or similar circumstances. Whether or not decedent did

exercise such care was a question of fact for the jury, and not a question for expert testimony.

4.  Same—Instructions—Error.—Where the instructions given present the law of the case, it is not error to refuse other instructions.

TAYLOR & EAVES, R. Y. THOMAS, JR., BLEWETT LEE, C. L. SILVEY and TRABUE, DOOLAN & COX for appellant.

WILLIS & MEREDITH and W. J. ROSS for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

About 11:40 a. m., on December 1, 1910, David Holland, while on the main track of the Illinois Central Railroad Company in its Central City yards, was struck and killed by a northbound passenger train. His administrator brought this action against the railroad company to recover damages for his death. A trial before a jury resulted in a verdict of $750 in favor of the plaintiff. From the judgment predicated thereon, the railroad company appeals.

Central City is an incorporated town of the fourth class. South of Central City are some mines, where several hundred miners and their families live. The evidence for the plaintiff is to the effect that the customary way for the people to go to and from Central City is through the railroad yards, and that the yards and tracks are habitually used by a large number of pedestrains. This evidence is corroborated by that of the engineer in charge of the train which struck the decedent. He states that because of the great number of people between the Mercer and Central City yards, he was in the habit of letting the bell ring. Plaintiff's witnesses also testified that the train which struck decedent was running at from thirty to thirty-five miles an hour; that the bell of the engine was not ringing, and that no signals were being given when decedent was killed. After the decedent was struck, the engine ran about 260 feet.

According to the evidence for the railroad company, the main track, on which decedent was killed, was about fifteen inches higher than the surrounding ground, and because the spaces between the ties were not filled with ballast, the track was not suitable for pedestrians. Between the main track and the adjoining side track there

was a pathway which was used by people passing through the yards. An extra gang of men was engaged on the morning of the accident repairing the track south of Shegogg's crossing, and a caution flag had been place for the purpose of notifying engineers on approaching trains that the track was out of repair, and it was necessary to slacken their speed. This flag was placed about a quarter of a mile south of the crossing. While the train was at a point south of this caution flag, the engineer gave the caution signal, one long, two short and another long blast of the whistle. Before reaching Shegogg's crossing, he gave the station signal, one long blast of the whistle. He then gave the crossing signal for Shegogg's crossing, one long and two short blasts of the whistle. After leaving Mercer, a point about three miles south of Central City, the bell on the engine rang continuously, and was ringing at the time of the accident. Upon perceiving the caution flag, the speed of the train was slackened, and at the time of the accident the train was running at the rate of about 18 miles an hour. Upon rounding the curve, the engineer perceived Holland in the act of stepping upon the track from the left side, and about six feet distant from the engine. Upon seeing Holland, the engineer applied his air with one hand, and with the other gave several short blasts of the whistle. Holland was immediately killed. Some two or three witnesses, who saw Holland just previous to the accident, state that he had been drinking, and was to some extent at least under the influence of whiskey. Other witnesses say that while he had been drinking, he was not incapacitated thereby, but was able to take care of himself.

We deem it unnecessary to detail the evidence more at length. We think plaintiff's evidence, taken in connection with the fact that there was no attempt on the part of the railroad company to show that its yards and tracks were not used by a large number of persons, was sufficient, if true, to show such use by the traveling public, as to impose upon the railroad company the duty of keeping a look-out for persons on the track, and of having its trains under reasonable control, and of giving such signals as were reasonably necessary to warn the traveling public of the train's approach. There being sufficient evidence on this phase of the case, and also sufficient evidence of the failure on the part of the railroad company to perform such duties, the court did not err in submitting the case to the jury.

Complaint is made of the fact that the court permitted one of plaintiff's witnesses to testify that when the train backed up after the accident, the engineer said, "I saw him, I killed him; it looked to me like he was looking about that train over yonder." Whether this remark was made sufficiently soon after the accident to constitute a part of the res gestae, we deem it unnecessary to determine. It is sufficient to say that the engineer, while denying that he made the statement, admitted every fact that the statement contained. Indeed, all the witnesses agree that the engine did strike decedent, and that decedent was on the track when struck. That being true, the statement, even if improperly admitted, was not prejudicial.

The court did not err in refusing to permit certain physicians to testify that a drunken man could not use the same care for his safety as a sober man. This is not a question for expert testimony. The court, by its instructions, imposed upon the decedent the duty of exercising the same care that an ordinarily prudent person, if sober, would exercise under the same or similar circumstances. By this instruction, this phase of the case was properly presented to the jury. Whether or not he did exercise such care was a question of fact to be determined by the jury, and which they were fully as capable of determining as the expert witnesses introduced.

We deem it unnecessary to set forth the instructions given and refused. The instructions given admirably presented the law of the case, and are not complained of. That being true, it was not error to refuse the instructions offered by the railroad company.

Finding no error in the record prejudicial to the substantial rights of the appellant, it follows that the judgment should be affirmed, and it is so ordered.