## Carter, Admr. v. C. & O. Ry. Co., et al.

(Decided November 13, 1912.)

### Appeal from Lawrence Circuit Court.

1. Railroads—Rule as to Owing No Duty to Trespasser Till Peril is Discovered—When Rule Does Not Apply.—The rule that a railroad company ordinarily owes no duty to a trespasser until his peril is discovered, and is not liable for an injury to him unless, after his peril is discovered, the injury might have been avoided by the exercise of proper care, does not apply in localities where, by reason of the use of the track by the public, the presence of persons on it is to be reasonably anticipated.

2. Railroads—Lookout Duty—Application of.—The fact that the accident did not occur in an incorporated city or town cannot, of itself, affect the case; it is the nature and use of the track by the public that is to determine the applicability of the rule which requires the lookout duty.

3. Railroads—Use of Track for Crossing—Notice—Trespasser—Licensee.—Where the use of the track by the public for crossing purposes is general, and acquiesced in by the railroad company, it is charged with notice of such use, and a trespasser becomes a licensee, to whom the company owes a lookout duty, although the accident happen in the company's yards.

4. Railroads—Lookout Duty—Submission to Jury.—Where a path leading from a county road into a railroad company's yards and across its tracks, was used daily by from 400 to 500 people, which number included employes of the company and the public generally, there was a sufficient use of the tracks for crossing purposes to impose a lookout duty upon the servants of the railroad company in operating its train at that point; and the question of the company's liability for causing the death of one who was not an employe of the company at said crossing, should have been submitted to the jury.

JOHN D. WOODS and A. O. CARTER for appellant.

WORTHINGTON, COCHRAN & BROWNING, F. T. D. WALLACE and M. C. KIRK for appellees.

Opinion of the Court by Judge Miller—Reversing.

The appellant, as administrator of the estate of Jeff Blevins, brought this action against the appellee railway

company and William Arnett, its engineer, to recover damages for the negligent killing of said Blevins. Blevins lost his life on July 23, 1910, in the yards of the appellee railway company immediately west of the town of Russell, in Greenup County. The relative positions of the tracks to the county road, the well where Blevins was working, and the path leading from it to the county road, are approximately shown by the following plat:

Blevins was killed at the point "X" near the **Big Four** house, and a house known as the R. U. cabin, which are situated between the county road and the railroad tracks. It will be noticed that the eastern limits of this yard extend to the western limits of the town of Russell. Two main line railroad tracks, one known as the "Eastbound," and the other as the "Westbound" track, run through the yard; and, in addition to these main tracks, there are quite a number of switch tracks used for yard purposes. In the yard there is also a round house, turntable, a coal tipple, and a number of small buildings used for railroad purposes. There are from 300 to 350 men employed about the yard, which is about a mile or more in length. The town of Russell contains about 1,500 inhabitants; and, as above stated, lies immediately east of and adjoining the railroad yard; while the smaller town of Advance, having from 500 to 600 inhabitants, lies about a mile, or more, southwestwardly from the railroad yard. A road to Advance left the county road a short distance west of the point where Blevins was killed. The county road ran immediately south of and nearly parallel with the tracks, from which it had been separated by a wire fence. At the point where the path from the cornfield crossed the tracks nearly opposite where the road to Advance leaves the county road, the fence had been torn or taken down, and had remained so for quite a while, without any effort, so far as the record shows, to replace it. At the point "Y," which is about 200 feet east of the R. U. Cabin, a path led across the yard towards the well and the turntable.

Ironton, Ohio, lies upon the opposite side of the Ohio River, and the village of Chinnville lies immediately west of the yard.

There was, also, a baseball field near the well, and the players would cross the track in going and returning.

Blevins was not in the employment of the railway company at the time of the accident. He was employed by the Hudson Engineering Company, which was engaged in digging an artesian well on the property of the railway company, on the bank of the Ohio River. This well was located about 1,200 feet north of the company's yard, with an open field lying between the well and the yard. Blevins boarded during the week—from Monday morning until Saturday evening—at David Bevins'

house, which was located on the river bank some distance below the well. On Saturday evening, however, he usually went to his father's residence in Advance, and stayed there until Monday morning. He had been living in this way for more than a month. Between four and five o'clock on the afternoon of Saturday, July 23, 1910, Blevins quit work at the well, and is supposed to have started to go to his father's home in Advance, which, as above stated, was about a mile or more south of the railway company's yard. In going from the well to the road leading to Advance, Blevins could have gone by any one of three routes. He could have gone by the way of Vernon street south to the path which leads along to the westbound main track, and thence westwardly to a point opposite the road leading to Advance; or, he might have gone by the path leading through the cornfield to the same point of crossing; or, he might have gone by the path leading around and near the turntable, in reaching the same point. It is not certain, however, which route he followed, and that question is not very material to the decision of this case. When he reached the point of crossing nearly opposite to where the county road leads to Advance, and marked "X" upon the plat, he was struck by one of appellee's trains, and killed. Alexander Hill and Haskell Lusk, aged 17 and 20 respectively, were standing between the eastbound track and the westbound track, near the point "X," at the time of the accident, and are the only eye witnesses who testified to the killing of Blevins. While they were waiting near the point "X" to get into the caboose of an eastbound freight train which was coming out of the yards, they noticed a westbound freight train near the Y. M. C. A. Building, and Blevins walking westwardly on the westbound track, with his back to the engine, and at a point between "X" and "Y." Both trains were rumbling, and as the immediate purpose of Hill and Lusk was to board the caboose of the eastbound train as it stopped or slowed up, they gave their principal attention to that train. Within a few moments, however, they heard some one call "look out;" and, as they turned and looked in response to the warning, they saw the engine of the eastbound train strike Blevins and pass over his body, causing his immediate death. Both say the westbound train gave no signal of its approach, either by bell or whistle; that they did not see the fireman, although they were

standing on the fireman's side of the engine; and that the engineer seemed to be standing like he was doing something to the boiler.

At the close of plaintiff's evidence, the circuit judge peremptorily instructed the jury to find for the defendants, and from a judgment so found, the administrator prosecutes this appeal.

There is no claim made that the train was running at an excessive speed, and the uncontradicted testimony shows that it was not running faster than five or six miles an hour. There was no street or highway across the railway yards, either at or in the immediate neighborhood of the point of the accident. Vernon street, which is approximately the dividing line between the town of Russell and the railway yard, is 1,265 feet from the point of the accident. Under these facts, and in consideration of the further fact that Blevins was not in the service of the railway company, the company insists that Blevins was a trespasser, to whom it owed no lookout duty, and no duty whatever until after his peril had been discovered; and that, as Blevins' presence upon the track was not discovered by the engineer until after he had been hit, the company is in no way liable for his death. On the other hand, appellant insists that Blevins was not a trespasser, but was a licensee, and had the right to cross the track at this point, which had been used for some thirteen years by the general public as a crossing place, with the implied consent of the company, and that it was daily crossed by from four to five hundred people, including the employes of the company, in going to and from their work. Appellant insists that these facts bring the case within that class of cases where the railroad company is required to give signals of the approach of the train, and to keep a lookout in all places where, by reason of the use of the track by the public, the presence of persons on it was to be reasonably anticipated. I. C. R. R. Co. v. Murphy, 123 Ky., 794; L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408; L., H. & St. L. Ry. Co. v. Lyons, 146 Ky., 603; and C. & Ry. Co. v. Warnock's Admr., 150 Ky., 74.

In reply, appellee insists that the rule just announced does not apply to this case, because the accident occurred in the company's private yards, which were not in a town or city, or intersected by a public crossing at the point of the accident. The question for decision,

therefore, is this: Does the rule contended for by appellant, and above referred to, apply to this case? And, if it does, was there sufficient evidence of negligence upon the part of appellee's engineer to justify a submission of the case to the jury?

Upon the question of the engineer's negligence, it must be admitted that the testimony of Hill and Lusk as to his failure to give a signal of any kind, was sufficient to carry that question to the jury.

The question of the character and extent of the use of the crossing, is of more difficulty. The fact that the accident did not occur in an incorporated city or town cannot, of itself, affect the case; it is the nature and use of the crossing by the public that is to determine the applicability of the rule which requires the lookout duty. C. & O. Ry. Co. v. Warnock's Admr., 150 Ky., 74.

If the use of the track by the public for crossing purposes was general, and acquiesced in by the railroad company, it was charged with notice of such use, and the trespasser became a licensee to whom the company owed a lookout duty, although the accident happened in the company's yard.

In Southern Ry. Co. v. Sanders, 145 Ky., 679, which was a case similar, in its controlling features, to the case at bar, we said:

"The facts of this case serve very well to illustrate the difference between the duty of the company at a street crossing and its duty in yards and premises owned and occupied by it. Here the place where appellee was injured was situated between two streets and was the private property of the railroad company. It had been set apart for its use in the transaction of its business and was occupied by its tracks and other buildings and property. It was not crossed by any street or public way, nor was it used for travel by the public, except on foot, but the company by its conduct recognized the right of the public to use these premises, and when a railroad company permits large numbers of the public to habitually travel to and fro upon its tracks and right of way, it must take care not to injure them, as the license to use the premises carries with it the assurance that the licensee will not be harmed by the neglect or carelessness of the licensor."

In the case at bar it appears that the crossing where Blevins was killed, was used daily by from 400 to 500

people. In order, however, to avoid the application of the general rule, appellee attempted to show, upon cross-. examination, that a large majority of those who used the track were employes of the company, and that there was no such use of the crossing by the general public as would bring the case within the rule. The evidence does not show that the use of the crossing was confined to the employes of the company; on the contrary, it tended to show that the crossing was so used by the employes and the general public, to the extent indicated. We cannot say, under the evidence before us, that the crossing was not used by the general public to such an extent as to deprive Blevins of his rights as a licensee. In our opinion, there was sufficient evidence to carry that question to the jury; and, as there was also sufficient evidence of the engineer's negligence, to carry to the jury the question of the company's performance of its duty to Blevins, the peremptory instruction to find for defendant should not have been given. I. C. R. R. Co. v. Holland's Admr., 147 Ky., 699.

Judgment reversed, and cause remanded for further proceedings.