## Southern Railway Company in Kentucky v. Sanders.

(Decided June 17, 1913.)

### Appeal from Anderson Circuit Court.

1. Railroads—Trespasser—Lookout Duty.—A railroad company owes no lookout duty to a trespasser upon its yards, its only duty to him being the duty of exercising ordinary care to protect him after his presence on the track is actually discovered.

2. Railroads—Licensee—Lookout Duty.—If, however, a pedestrian is injured at a place where a large number of persons were accustomed to using the tracks and premises of the company, the person injured becomes a licensee, and the company owes him a lookout duty.

3. Railroads—Use of Yards by the Public.—Where there was evidence to show that the place in the yards of a railroad company where the appellee was injured, was used by the people generally as a passway, the question of the negligence of the company in failing to exercise a proper lookout duty was for the jury.

WILLIS, TODD & BOND, ALEX. P. HUMPHREY and EDWARD P. HUMPHREY for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On March 5, 1910, the appellee, Sanders, lost his foot by reason of it having been crushed by an engine of the

appellant company, in the yards of the company at Lawrenceburg. Upon the first trial he recovered a verdict and judgment for $5,800; but upon an appeal from that judgment, it was reversed and remanded for a new trial. 145 Ky., 679. The facts connected with the injury are stated in detail in the former opinion and need not be repeated. The evidence upon the former trial did not satisfactorily show that the portion of appellant's yards upon which the house track and the tobacco track were located, and where appellee was injured, was used by the public, at night, to such an extent as to impose a lookout duty upon appellant; and as appellant's case turns largely upon that question, the former opinion considered it at length. The substance of the opinion, in so far as it touched this question, is found in the following excerpt treating of Sanders' relation to the company, to-wit:

"If he is to be treated as a trespasser, the motion for a peremptory instruction to find for the company should have been sustained because the company only owed him the duty of exercising ordinary care to protect him after his presence on the track was actually discovered and the evidence is conclusive that the trainmen did everything that could have been done to avoid the injury after his peril became known. If, however, appellee is not to be treated as a trespasser, but as a licensee and the company owed him a lookout duty, there is enough in the record to take the case to the jury on the theory that his peril by the exercise of the required care could have been discovered in time to have prevented the accident."

If Sanders was a trespasser the company owed him neither a lookout duty nor warning, and appellant's motion for a peremptory instruction should have been sustained; but if a large number of persons were habitually accustomed to using the tracks and premises of appellant company at the place where appellee was injured, appellee was a licensee and the case should have been submitted to the jury. Such were the instructions laid down in the former opinion for the second trial of the case; and in closing, the court said, unless there should be the quantity of evidence indicated, upon the use of the tracks and premises by the public during the night, or about the time appellee was injured, the court should direct a verdict for the railway company.

Upon the second trial appellee recovered a verdict for $5,000 and from a judgment in accordance therewith,

the defendant prosecutes this appeal. For a reversal, appellant confines its objection to two grounds and insists, (1) that the court should have sustained its motion for a peremptory instruction because the evidence failed to show a use of the yards and track by the public to the extent required by the former opinion; and (2) that the verdict is flagrantly against the evidence. In all respects other than that relating to the use of the yards by the public, the evidence is substantially the same as it was upon the former trial; and appellant insists there is no material difference in any respect. This necessitates a careful review of the testimony upon the subject of the use of appellant's yards and tracks by the public, which we will now give it.

Court street runs about east and west and immediately south of the passenger station, while Woodford street is the next street north of, and runs parallel with Court street. The house track runs along the west side of the station platform, while the tobacco track begins near Court street, at a point some distance from the house track, and joins the house track at or near the north end of the station platform where appellee was injured. The house track and the tobacco track thus form a figure like the letter "V" with its two ends resting upon or near Court street. The large space in between the two tracks was not lighted, except by such light as might penetrate therein from the public lights on Court street, and when persons would walk through the space between the two tracks going north to Woodford street, they would necessarily have to cross the tracks in order to pass over their intersection and get to the main track beyond. The usual way of passing from Court street to Woodford street was along a concrete platform running along the east side of the station, and thence up the cinder path along the main railroad track; but pedestrians would frequently make a short cut across the open space west of the station, and gain the main track at the north end of the platform by crossing over the intersection where Sanders was injured.

Dr. Kavanaugh testified that he was familiar with the use of the railroad yard by the public between Woodford street and Court street, and says it was so used until all the trains came in, which was about 10 or 10:30 o'clock at night. He said he always went that way himself and always met many people, and had gone out from the station with people; and that his family and his

sister's family always came out that way. The substance of his testimony is that people used the yard generally in passing between Woodford street and Court street until after train time at night.

James Crossfield, a former town marshal and deputy sheriff, says he was familiar with the premises about the depot; that the yard of the company was open so that any one could enter from the street; that a good many people would pass through the yard in going back and . forth between Woodford street and the company's station; that a man would pass from the open space between the tobacco track and the house track whenever he took a notion to do so; and that a good many people did so use it.

Will Johnson, a deputy county court clerk, lived on Woodford street for twenty years and was well acquainted with the tracks and yard of the railway company between Woodford street and Court street. He says the people living on Woodford street and traveling from Court street to Woodford street would walk over the right of way and tracks of the company up until after train time which was about ten o'clock at night, a great deal; "a good many came that way;" and that many of the people who lived on Woodford street in going to entertainments at the opera house on Court street would walk upon the railroad tracks.

James Selby, lived on Woodford street and testified that when people are near the opera house on Court street and want to go to Woodford street, most of them would go across the railway tracks and some of them would come through town; that people would go to the switch near the east end of the station platform and then walk north in the middle of the main track; and that a good many people passed that way in going from Court street to Woodford street. The foregoing is the substance of the testimony upon this question. In this connection, it will be remembered that the house track and the tobacco track which lie west of the depot, join at the switch near the north end of the station where appellee was hurt and continue thence as a single track north to Woodford street, parallel with the main track which runs in the same direction along the east side of the station, and that the point where appellee was injured lies near the main track. In going from Woodford street to the station pedestrians would follow the main track to a point near the switch where Sanders was in-

jured and thence on the concrete platform; but in going to other portions of the town they would frequently cut across over the switch and through the yards between the house track and the tobacco track; and the evidence shows this last named use was unrestrained and to be expected until after train time at night.

The case is somewhat like Carter's Admr. v. C. & O. Ry. Co., 150 Ky., 529, where we said that if the use of the track by the public for crossing purposes was general and acquiesced in by the railway company, it is charged with notice of such use, and a trespasser becomes a licensee to whom the company owes a lookout duty, although the accident happened in the company's yards. In the Carter case the evidence of the use by the public was no stronger than in the case at bar, and in the Carter case we said the evidence was sufficient to carry the case to the jury.

Again, in C., N. O. & T. P. Ry. Co. v. Harrigan's Admx., 149 Ky., 58, we had before us the question whether the evidence in that case was sufficient to show such a general use of the railroad yards by the public as to make Harrigan a licensee and not a trespasser; and in speaking of the effect of the evidence, we said:

"The substance of the testimony upon this point is, that whenever pedestrians had occasion to cross the tracks in this immediate neighborhood, either for the purpose of going to the mill, or elsewhere, and were not sufficiently energetic and careful to walk up to the overhead bridge, they would walk over the tracks when and as it suited their convenience. To say that this was not an unusual, but on the contrary, was the usual state of case under circumstances of this character, is merely to announce a condition that is generally known to all persons in a city of any size. This evidence was sufficient to carry the question of the use of the tracks to the jury."

So, in the case before us. The yards of appellant were open, and as they afforded a nearer and more direct route for the many persons passing between Woodford street and Court street, or from the north end of the station to Court street, it was but natural, and to be expected, that pedestrians would pass through them when and as it suited their convenience. The evidence shows that this use was continued until after train time, or as late as ten o'clock at night, thus bringing the case within the rule announced in the opinion upon the first

appeal. The evidence was, therefore, sufficient to carry the case to the jury; and the jury being the judges of the weight to be given the evidence, we cannot say, under all the circumstances, that their verdict is flagrantly against the weight of the evidence.

Judgment affirmed.