## Cincinnati, New Orleans & Texas Pacific Railway Company v. Blankenship.

(Decided March 4, 1914.)

### Appeal from Jessamine Circuit Court.

1. Railroads—Operation—Notice of Approach of Train.—It is the duty of those operating a railroad train, to moderate the speed of the train, to give notice of its approach, to keep a lookout, and to take such precautions for the safety of others as the circumstances demand.

2. Railroads—Safety of Persons Crossing Track.—What precautions may be necessary in a particular case to provide for the safety of persons crossing or using the track, will depend, to some extent, upon the character of the locality.

3. Railroads—Use of Track for Passway—Presence of Persons on Track.—If the public generally, with the knowledge and acquiescence of the railroad company, had continuously used the track as a passway for such a period of time that the presence of persons on the track was to be anticipated by those running the train, the law imposed upon the company a lookout duty for those who thus used the track.

4. Railroads—Accident Within Limits of Town—Lookout—Trespassers.—The fact that the place at which an accident occurred

was within the corporate limits of a town did not, of itself, impose upon the railroad company the duty of lookout, and warning, and other care necessary at crossings and upon streets, since a railroad track might be within the corporate limits of a town, and yet not be on a street or a place habitually used by the public; and unless one of these facts is shown to exist, persons who used the tracks may be said to be trespassers.

N. L. BRONAGH, R. A. THORNTON and JOHN GALVIN for appellant.

E. B. HOOVER, ROBERT HARDING and EMMETT PURYEAR for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Blankenship having recovered a judgment against the appellant Railway Company for $500.00 damages for personal injuries, the Railway Company appeals.

The accident occurred within the limits of the city of Nicholasville on December 8, 1910. The railroad runs through the northwestern section of the town, the passenger station being located within the city limits. Hawkins' Crossing is likewise located within the city limits and on the railroad about 400 yards south of the station, while the Harrodsburg turnpike crosses the railroad several hundred yards south of Hawkins' Crossing, and beyond the city limits. Jessamine Station is located on the railroad nearly two miles south of the Harrodsburg turnpike crossing above referrd to.

On the morning of the day indicated, Blankenship left Jessamine Station to go to Nicholasville. He was walking, and went by the way of the turnpike until he reached the Harrodsburg crossing, from which point he proceeded northwardly on the railroad track toward Nicholasville. When within the city limits and shortly before he reached Hawkins' Crossing, Blankenship heard the whistle of a northbound passenger train approaching him from the rear. He turned and looked at the approaching train, and, seeing that it was taking the western side-track, he passed over to the main track, which was east of the side-track. About this time a southbound freight train was approaching on the main track from the north and traveling at the rate of about eight or ten miles an hour. The engineer of the southbound train saw Blankenship when he was about six car lengths from him, and says he then sounded his whistle; that Blankenship stepped from the center of the track to the end of

the cross-ties on the east side of the track as if he intended to leave the track. The engineer of the southbound train did not, however, apply the emergency brake until he was within one or two car lengths of Blankenship. Blankenship evidently did not see the southbound train. It struck him and knocked him from the track. His injuries consisted of a scalp wound one-half inch long; a cut on the nose and tongue; a bruise under the chin on his right jaw and shoulder; and a fractured rib. He also claimed his ability to work had been permanently impaired.

Blankenship says the train that struck him did not sound its whistle, and that he did not see it, or know of its approach, until he was struck. It appears from the evidence that shortly after the southbound train had sounded its whistle and Blankenship had passed from the west track to the main track, the trainmen on the northbound train, seeing his danger, began shouting to him to get off the track. Blankenship, however, did not understand what they were saying, and continued to listen to them, trying to understand them. In this way it is entirely probable his attention was so continuously attracted to the northbound train that he did not see the southbound train.

Appellant insists that Blankenship was a trespasser upon its track to whom it owed no duty until it discovered his presence upon the track, and that the evidence conclusively shows it did everything within its power to prevent the accident, after Blankenship's presence upon the track was discovered. It is further insisted that while the point at which the accident occurred was within the corporate limits of the city of Nicholasville, nevertheless, the neighborhood was sparsely settled, and, really, was a country rather than a city locality.

We have repeatedly held it to be the duty of those operating railroad trains to moderate the speed of the train, to give notice of its approach, to keep a lookout, and to take such precautions for the safety of persons upon the track as the circumstances demand. L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408. What precautions may be necessary in a particular case will depend, to some extent, upon the character of the locality; and, although Blankenship may have been technically a trespasser, nevertheless, if the public generally, with the knowledge and acquiescence of the railroad company,

had continuously used the track at that point, as a passway for such a period of time that the presence of persons on the track was to be anticipated by those running the train, the law imposed upon the company a lookout duty for the protection of those who thus used the track. C., N. O. & T. P. Ry. Co. v. Harrigan's Admx., 149 Ky., 58; Carter's Admr. v. C. & O. Ry. Co., 150 Ky., 529; Southern Ry. Co. v. Sanders, 154 Ky., 421.

The mere fact, however, that the place at which the accident occurred was within the corporate limits of a town did not of itself, impose upon appellant the duty of lookout and warning and other care necessary at crossings and upon streets. A railroad track might be within the corporate limits of a town and yet not be on a street or a place habitually used by the public; and unless one of these facts is shown to exist, persons who use the tracks may be said to be trespassers. L. & N. R. R. Co. v. Redmon, 122 Ky., 385; I. C. R. R. Co. v. Johnson, 115 S. W., 798.

Whether, therefore, Blankenship was a trespasser on the track, or, was at a place where, by reason of its use by the public, he was entitled to a lookout duty from those in charge of the train, was a question of fact to be determined by the jury, from the evidence before it. There was evidence in abundance tending to show a general use of the track at this point by pedestrians; and that being true, it was for the jury to say whether the use existed, or whether it was sufficient under the rule above referred to. That question was submitted to the jury under a proper instruction giving the law of the case. Indeed, there is no complaint whatever made against any of the instructions; appellant merely contends that appellee was a trespasser; that the evidence shows there was no negligence upon the part of appellant, and that therefore it was entitled to a peremptory instruction. This, however, is not a fair statement of the evidence since Blankenship is positive in his statement that the southbound train, which struck him, did not whistle or give him any signal of its approach. If that was true, and the jury had the right to believe it, the question of the appellant's negligence was properly submitted to the jury.

The same may be said as to appellant's plea of contributory negligence. That question was likewise submitted to the jury under a proper instruction.

We see no error in the record. The judgment is affirmed.