## Chesapeake & Ohio Railway Company v. Berry's Administrator.

(Decided April 23, 1915.)

### Appeal from Greenup Circuit Court.

1. Railroads—Death Caused by Negligent Operation of Train—When Railroad Company Liable For.—Where, in an action to recover damages of a railroad company for the death of a person, the petition alleges two acts of negligence, either of which was sufficient to cause the death, proof that it was caused by either act of negligence will authorize a recovery.

2. Railroads—How to be Operated in a City or Town—License.—It is a well settled rule that greater care should be used in running a railroad train through a city or town than is required in approaching a highway or crossing in the country, because of the presence of persons on the streets or traveled ways occupied by railroad tracks, or their presence on the tracks. Under such circumstances, those in charge of the train must use ordinary care to keep a constant lookout for persons on or crossing the track, and should reduce the speed of the train and give the customary speed signals to warn persons of the approaching danger; and this rule also applies as to any part of the railroad company's right of way or any of its tracks, in a city or town, which it has licensed the public to use.

3. Negligence—Contributory Negligence—When a Question for the Jury.—While a person walking upon a street or traveled way occupied by the tracks of a railroad company, or upon such tracks, has the right to rely upon its servants' maintaining a proper lookout and giving the customary signals of the movements of its trains thereon, it is his duty to use ordinary care for his own safety; and if he fails to use such care and such failure con-

tributes to his injuries or death to such an extent, that but for same, he would not have been injured or killed, no liability should be fastened upon the railroad company for his injuries or death. But ordinarily, the question whether he was guilty of contributory negligence which so contributed to his injuries or death, that but for same he would not have been injured or killed, should be left to the decision of the jury.

4. Trial—Peremptory Instruction—When Authorized.—To authorize a peremptory instruction directing a verdict for the defendant, it must appear that, admitting the plaintiff's testimony to be true and every inference fairly deducible therefrom, he has failed to support his cause of action. This rule for determining when the giving of a peremptory instruction is admissible, obtains in every action for death or personal injury from negligence, whether the peremptory instruction be asked on the ground that there is no evidence conducing to show the defendant's negligence, or on the claim that the contributory negligence of the deceased or injured person, is established by the evidence.

WORTHINGTON, COCHRAN & BROWNING for appellants.

DINKLE & PRICHARD and PROCTOR K. MALIN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In this action, brought by the appellee, John C. Berry, administrator of the estate of William Berry, deceased, against the appellants, the Chesapeake & Ohio Railway Company, Burton Belton, engineer, and Ed V. Gilliam, fireman, in its employ, there was a recovery of a verdict and judgment for $8,000.00 damages. The refusal of the circuit court to grant appellants a new trial resulted in this appeal.

The decedent, William Berry, while walking westward on a track of the appellant company in the town of South Portsmouth, Greenup County, was struck and killed by one of its freight trains, operated by the appellants Belton and Gilliam as engineer and fireman. The depot platform at South Portsmouth is about three hundred feet in length and is situated between the railroad tracks and the Ohio River. The decedent seems to have been struck by the engine at a point between three hundred and four hundred feet from the west end of the depot platform, the train running westward. He had just returned from the city of Portsmouth, which is in the State of Ohio, on the Ohio River opposite South Portsmouth, having in his possession a sack of grass seed purchased at Portsmouth, Ohio, with which he was

going to his home; the residence being situated several hundred feet west of the depot and facing the railroad.

Decedent, after crossing the Ohio River on the ferry-boat, walked up the ferry landing road to the depot platform, thence down the platform to the west end of it, where he got on the westbound track and proceeded toward his home, carrying the sack of grass seed on his shoulder. After walking down the track about three or four hundred feet he was overtaken and struck by the train, which was not in sight at the time he stepped on the west track from the depot platform. It appears from the bill of evidence that there were some cars on the spur track paralleling the main tracks and between them and the river at the point where decedent was struck and killed, but there were no cars on the tracks or anything else to obstruct the view of those in charge of an engine or train going west, and that those in charge of a train or engine, or a man standing, on the main westbound track at a point two thousand feet east of the point of the collision, could see a person upon the railroad track where the collision occurred.

According to the testimony of the engineer, Belton, he blew the regulation whistle for the road crossing east of the depot, but he did not indicate the precise point at which the whistle was sounded. The fireman, Gilliam, failed to testify that such a whistle was blown, and the same was true of the head brakeman, Bracken. Two other witnesses, who were introduced in appellants' behalf, Mrs. Bush and Mrs. Cooper, failed to testify that they heard the whistle the engineer claimed to have sounded for the road crossing. A witness, Brooks, testified, however, that he heard a whistle as the train came around the curve, quite a distance east of the depot. Roy Berry, Mrs. Tony Davenport, Mrs. Frank O'Brien, Bessie Berry, and Jeff Smith, appellee's witnesses, testified that they did not hear the whistle sounded for the crossing east of the depot.

According to the testimony of the engineer, Belton, he did not see the decedent before the train struck him. He claimed to have been maintaining a lookout from the engine cab, but that after passing a water stand situated near the west end of the platform, he was prevented from seeing the track at the point where decedent was struck, because of a curve in the track which caused the smoke-stack and front of the engine to intercept his

view; but that upon the train's reaching the end of the depot platform the head brakeman, Bracken, who happened to be in the cab of the engine, called to him that a man was on the track and to sound the whistle, which he immediately did, twice. At that time the fireman was engaged in putting coal in the firebox of the engine. Perhaps a better understanding of what then occurred will be obtained from the following questions put to the engineer and his answers thereto:

"Q. What did he (the brakeman) say to you? A. The brakeman called to me and notified me there was a man on the track and I blew the regulation road crossing about the west end of the platform, and the fireman was down in the pit putting in the fire, but he immediately looked out of the window and notified me that the man had been struck in attempting to get off, and I whistled again and applied the brakes. Q. Was there any interval or space of time between your whistles A. Very little; they were right together."

Both Gilliam, the fireman, and Bracken, the head brakeman, corroborated these statements of the engineer, and further testified that at the time the engineer's attention was called to decedent's being on the track and the whistle was first blown, the engine was about eight car lengths from the point where decedent was struck. The brakeman also testified that he could not reasonably have seen the decedent sooner than he did because of the close proximity to the track of the columns of the water stand, which made it dangerous for him to extend his head beyond the side of the cab until the engine passed these columns.

On the other hand, Mrs. Tony Davenport, who had crossed on the ferry boat with decedent from Portsmouth, and was walking or standing near the place of the accident, testified that no whistle was blown or bell rung until about the time the decedent was struck by the train, and Roy Berry's testimony was to the same effect. He did not, however, see the train when it struck the decedent and was some distance from the place of the collision, so his statement as to where the train was when the whistle was sounded, was merely a matter of judgment in locating the place of the sound.

According to the testimony of appellee's witnesses, the train in approaching the depot and when it struck the decedent, was running at a high rate of speed, some

of them saying twenty-five, some thirty-five, and one of them at a speed of forty miles per hour. The engineer, fireman and brakeman fixed its speed at from fifteen to twenty miles an hour. According to all of the appellee's witnesses, there was no ringing of the engine bell as the train approached and passed the station.

It is conceded that South Portsmouth is a town of the sixth class, containing in its corporate limits and suburbs a population of about two thousand people; that there is but a narrow strip of level or bottom land between the Ohio River and the contiguous hills, substantially the whole of which is occupied by the depot and tracks of the appellant Chesapeake & Ohio Railway Company; and that several hundred people daily use the tracks at the point where the decedent was killed.

Appellants urge a reversal of the judgment upon three grounds: (1) Error of the court in failing to peremptorily direct a verdict for appellants; (2) error in refusing appellants a new trial, because the verdict of the jury was flagrantly against the evidence; (3) error in instructing the jury.

It is insisted for appellants that their motion for a peremptory instruction should have been sustained for two reasons: (1) There was no evidence of negligence on the part of appellants; (2) the evidence conclusively established the contributory negligence of the decedent. With respect to the first of these propositions it is argued that under the allegations of the petition the right of recovery is confined to the alleged negligence of the appellant railway company's servants in the operation of the train after their discovery of the decedent's peril; and that as there was no negligence shown in this particular the trial court should have peremptorily directed a verdict for appellants. The negligence of which appellee complains in the petition is alleged as follows:

"Plaintiff states that the negligence of the defendants which caused the death of his said decedent at the time and place aforesaid, consisted of the said defendants operating said engine and train in the corporate limits of said city at a reckless, unusual and excessive rate of speed without signaling or warning of its approach to the place where it struck and killed the said decedent, and with gross and reckless negligence and indifference failed to use ordinary care to discover the said decedent on said track, in time to have prevented injur-

ing and killing him as aforesaid; and did with gross negligence and indifference fail to stop said train or check the speed thereof sufficiently to avoid striking the decedent by the use of ordinary care after discovering his peril on said track.''

Preceding these allegations are others to the effect that the negligence complained of was gross, and the joint and concurrent negligence of all the appellants.

It is further argued by appellants' counsel that, though the above averments of the petition charged two acts of negligence, if those in charge of the train did actually see the decedent upon the track, and did discover his peril, in time to have stopped the train and avoid its striking him, then it is immaterial as to what prior negligence they were guilty of; for in such case the failure to keep a lookout or to give warning of the train's approach or to run the train at a proper rate of speed, did not cause the accident or contribute thereto; it was the negligent failure to stop the train after the discovery of the decedent's peril. The argument is illogical. If, in fact, the decedent's presence on the track was seen by those in charge of the train in time to have avoided the accident by stopping the train before it struck him, the failure to stop it was such negligence as would of itself have authorized a recovery, and in such case proof of the previous negligence of those in charge of the train, in failing to maintain a lookout, give warning of its approach or reduce its speed, would not be necessary to authorize a recovery. But if, in point of fact, the evidence did not show any negligence on the part of those in charge of the train, in failing, after discovering the decedent's peril, to stop it in time to avoid striking him, but did show that they were previously negligent in failing to keep a lookout or give signal of the train's approach, or in reducing its speed, and that but for such negligence the decedent would, or might, have had such warning of the approach of the train as would have enabled him to get off the track and out of its way, may it not then be said, and is there not reasonable ground for saying, that such negligence caused the decedent's death; although those in charge of the train, after discovering his peril, may not have been able, by the exercise of ordinary care, to have stopped the train in time to avoid striking him.

As has been stated, the petition alleges negligence on the part of the appellants in two particulars, either of which, if it caused the death of the decedent as charged, authorized a recovery of damages; this being true, a failure of proof as to one would not prevent a recovery as to the other, if proved. The rule invoked by appellants' counsel, that where a negligent act complained of has been specified no recovery can be had upon a showing of negligence in other respects, has no application to this case, for here each of the negligent acts complained of, though distinct, is specifically alleged and relied on.

In L. H. & St. L. Ry. Co. v. Osborne, 149 Ky., 648, the action was one for damages for injuries caused the plaintiff by an employe of the railroad company in running a motor railroad car against and over her. The negligence alleged in the petition was that the car was defective and that it was operated by the person in charge in a grossly careless and negligent manner. On the appeal it was contended by the railroad company that the operation by its servant of a defective car was the specific negligence charged in the petition, and as the proof failed to show any defect in the car a verdict should have been directed by the trial court for the defendant. In rejecting that contention we, in the opinion, said:

"The negligence referred to is not the only negligence alleged in the petition. It, in addition, alleges that the car 'was operated in a grossly careless and negligent manner.' It is true the evidence failed to show the car defective, unless the fact that it was unprovided with a gong or bell made it defective, which we do not hold to be so, but there was evidence which conduced to prove that it was operated at a dangerous rate of speed and without any warning of its approach. The failure to prove the car defective did not prevent a recovery, if appellee's injuries resulted from its negligent operation at a dangerous rate of speed, or because of a failure to give notice of its approach. In either event the negligence was such as to come under the broader averment that the car 'was operated in a grossly careless and negligent manner.' So to charge that the negligence complained of consisted in running the car at a dangerous rate of speed, or without warning of its approach, is not an allegation of specific negligence distinct from that contained in the more general charge that

the car 'was operated in a grossly careless and negligent manner.' We may also add, that even if appellee was a trespasser when her injuries were received, proof that they resulted from the negligence of Morgan in failing to stop the car after discovering her peril would have authorized a recovery, under the allegation of the petition as to the grossly careless and negligent operation of the car. * * * In the next place, it is insisted for appellant that the court erred in permitting appellee to introduce evidence which conduced to prove that its employe in charge of the car might, by the exercise of ordinary care, have discovered her peril in time to have prevented her injury. We do not consider this evidence incompetent, as this ground of recovery was covered by the averment of the petition that the car 'was operated in a grossly careless and negligent manner.' In other words, in order to have availed herself of this ground of recovery it was not necessary that appellee should have confessed in her petition that she was a trespasser and invoked therein the doctrine of the 'last chance.' ''

The cases cited and relied on by appellants' counsel as supporting the rule that where the negligent act complained of is specified no recovery can be had upon a showing of negligence in other respects, are inapplicable to this case because of the inapplicability of the rule itself. We are free to confess that the evidence in this case fails to show any negligence upon the part of those in charge of the train, in failing to stop it before striking the decedent, after his peril was discovered. So, a recovery upon the negligence complained of in that particular by the petition, was unauthorized; but there was abundant evidence conducing to prove the other acts of negligence alleged in the petition, viz., that those in charge of the train operated it in the corporate limits of the town of South Portsmouth at a "reckless, unusual and excessive rate of speed, without signalling or warning of its approach to the place where it struck and killed the said decedent; and with gross and reckless negligence and indifference failed to use ordinary care to discover the decedent on the track in time to have prevented injuring and killing him."

Indeed, notwithstanding their contention that the only negligence specified by the petition was the failure of those in charge of the train to stop it after discover-

ing the decedent's peril in time to prevent its striking him, and that the court should have directed a verdict for appellants because of the absence of proof tending to show that they could have stopped the train after discovering his peril, appellants' counsel make in their brief the following admission:

"It is conceded that under the evidence it was the duty of appellants to have anticipated the presence of the decedent upon the railway tracks, and that out of this duty grew the further duties of maintaining a lookout, giving signals of the train's approach, and running the train at a reasonable rate of speed; that looking at the evidence alone there was sufficient testimony introduced by appellee to have required the submission to the jury as to whether or not these duties were performed."

It is true that no witness was able to testify or did testify that the decedent was actually seen on the track by those in charge of the train in time to have prevented his death, but the evidence furnished by them to the effect that the track was clear of obstructions from where the train made its appearance around the curve, for a distance of two thousand feet, or 666 yards, to the place of the accident; that there was nothing to have prevented those in charge of the train from seeing the decedent in time to have given timely warning of the approach of the train by the sounding of the whistle or the ringing of the bell, and that such warning was not given; indeed, it is conceded that there was no signal from the train until the alarm whistle was sounded, after the engine got within from three to four hundred feet of the decedent, and at a point where it could not have been stopped before striking him. This evidence, together with the dangerous speed of the train, the fact that those in charge of it owed the decedent a lookout duty, and that they should have anticipated his presence on the track, presented facts from which the jury might have inferred negligence on the part of the appellant railway company and its servants.

If the engineer, after reaching the point two thousand feet from the place of the accident, and where the place of the accident came into full view, had given proper signals of the approach of the train, reduced its running to such a speed as would have been reasonably safe to pedestrians walking on the track, as was the

decedent, it is highly probable that the latter would not have been killed, as such precautions would at least have given him an opportunity to learn of the coming of the train and time to get out of its way by stepping off the track.

We have repeatedly held that in the operation of railroad trains it is a well-settled rule that greater care should be used in running the train through a town or village than is required to be exercised in approaching a crossing in the country, because of the passing of persons on the streets or traveled ways, where they are occupied by the railroad tracks. Under such circumstances those in charge of the trains must use ordinary care to keep a constant lookout for persons crossing the track and should reduce the speed of the trains and give the usual signals to warn persons of approaching trains.

In I. C. R. Co. v. Outland's Admx., 160 Ky., 714, the rule is thus stated: ''We have repeatedly held that in cities and towns where the population is dense and the streets are occupied by the tracks of a railroad company, the latter is bound to operate its trains, both day and night, at a safe rate of speed, giving the customary notice of their approach, maintaining a proper lookout and take such other precautions as circumstances and the exercise of ordinary care may require for the security of life.'' C. & O. Ry. Co. v. Booth, 149 Ky., 245; L. & N. R. Co. v. McNary's Admr., 123 Ky., 787; L. & N. R. Co. v. Potts, 92 Ky., 30; L. & N. R. Co. v. Cummins' Admr., 111 Ky., 333; Rader's Admr. v. L. & N. R. Co., 126 Ky., 722; L. & N. v. Trisler, 140 Ky., 447.

In I. C. R. Co. v. Murphy, 123 Ky., 787, Murphy was unaware of the approaching train that struck him, while those in charge of the train for quite a distance saw, or could, if maintaining a lookout, have seen him, but did not slacken the speed of the train. We held that running a train at a high rate of speed through a populous community, a city of more than two thousand inhabitants, was negligence as to licensees, even trespassers, whose presence was or could by the exercise of ordinary care have been anticipated.

The doctrine announced by the authorities, *supra*, is not confined to cities and thickly populated communities, but is also applicable to towns or villages, even of inconsiderable population, where the public, with the knowledge and acquiescence of the railroad company,

have so continually used its tracks for such a time, as that the presence of persons on the track at the point where it is so used, should be anticipated by the company in running its trains. L. H. & St. L. Ry. Co. v. Osborne, 149 Ky., 648; Davis v. L. H. & St. L. Ry. Co., 30 R., 173; McCabe v. Maysville & Big Sandy R. Co., 28 R., 538.

Appellants' contention that the peremptory instruction asked by them should have been granted because of the contributory negligence of the decedent, is untenable. If, as testified by a majority of appellee's witnesses, there was no signal from the train after it rounded the curve and came in sight at a distance of 666 yards from the place of the accident, until it reached the west end of the depot platform, and the decedent was going in a westerly direction, as was the train, and with his back toward it, no reason is perceived for saying that he actually knew, or could, by ordinary care, have known, of its coming, or of the danger to him of remaining on the track. If, as testified by the engineer, fireman and brakeman, the train was within three or four hundred feet of the decedent when the whistle was blown, and, as they further testified, that this sounding of the whistle was not given until the decedent was discovered on the track, and when they were unable to stop the train before it reached and struck him, it is not unreasonable to conclude that when and after he then heard the whistle, he did not have time to get off the track before the train struck him. To authorize a peremptory instruction directing a verdict for the defendant, it must appear that, admitting the plaintiff's testimony to be true and every inference fairly deducible therefrom, he has failed to support his cause of action. This rule for determining when the giving of a peremptory instruction is admissible, obtains in every action for death or personal injury from negligence, whether the peremptory instruction be asked on the ground that there is no evidence conducing to show the defendant's negligence, or on the claim that the contributory negligence of the deceased or injured person is established by the evidence. Haley's Admr. v. C. & O. Ry. Co., 157 Ky., 208; C. & O. Ry. Co. v. Conley, 136 Ky., 601; Central Coal & Iron Co. v. Owens, 142 Ky., 19; C., N. O. & T. P. Ry. Co. v. Rule, 142 Ky., 694; Southern Ry. in Ky. v. Goddard, 121 Ky., 567. The application of this rule to the instant case demonstrates the correctness of the ruling of the circuit court in refusing the peremptory instruction asked by appellants.

In I. C. R. Co. v. Flaherty, 139 Ky., 147, it appears that the plaintiff when struck by a train was walking on the railroad track where persons were licensed to go and accustomed to use it, and although he could easily have stepped off the track and out of the way of the train had he seen it, or been warned of its coming, it was held that neither this fact nor his failure to look for the train authorized a peremptory instruction for the railroad company, as there was evidence which conduced to prove that no lookout was maintained by the engineer or fireman of the train, and that by a proper lookout they could have discovered his danger in time to have warned him and prevented it from striking him; in other words, it was held in that case that the question whether the plaintiff was guilty of contributory negligence was for the jury.

In C. & O. Ry. Co. v. Booth, *supra,* it was said on this subject:

"While appellee, by turning his head, would doubtless have seen the approaching train in time to have avoided his injuries, it cannot be said that his failure to do so was *per se* negligence; nor did such failure relieve appellant and those in charge of the train from the duty of exercising ordinary care to discover his presence, and like care to avoid injuring him. This duty should have been performed by maintaining a proper lookout from the engine and giving the customary signal of the approach of the train. If those in charge of the train failed to maintain a lookout or to give the necessary signals, such failure constituted negligence; and if, by reason thereof, appellee was injured by the train, he was clearly entitled to recover. On the other hand, while appellee, in walking upon a street containing appellant's railroad track, had the right to rely upon its giving the customary signals of the movements of its trains on such street, it was his duty to use ordinary care for his own safety; and if he failed to use such care and such failure contributed to his injuries to such an extent, that but for same, he would not have been injured, no liability should have been fastened upon appellant because of such injuries."

It follows from what has been said that the question whether the decedent was guilty of contributory negligence, which so contributed to his death, that, but for such negligence, he would not have been killed, was properly left to the decision of the jury.

We find no merit in appellants' complaint of the instructions. The first one, of which they alone complain, which submitted to the jury the question whether or not a proper lookout was kept or reasonable warnings given of the train's approach, and whether it was operated at a proper rate of speed, is objected to upon the ground that these issues should have been eliminated from the case, because the negligence alleged in the petition is confined to the failure of those in charge of the train to stop it after discovering the decedent's peril in time to have prevented his death. Our rejection of this contention of the appellants, heretofore stated, disposed of this objection. As previously stated, the negligence alleged in the petition is not confined to the issue indicated. The verdict is not flagrantly against the evidence. The instructions as a whole fully and fairly advised the jury as to all the law applicable to the issues of fact made by the pleadings, and are unobjectionable in phraseology.

Judgment affirmed.