## Louisville & Nashville R. Co. v. Smith's Admr.

(Decided November 14, 1919.)

### Appeal from Letcher Circuit Court.

1. Railroads—Presence of Persons on Track—Warnings.—Where the public generally, with the knowledge and acquiescence of a railroad company, have continuously used its tracks for a long period of time, the presence of persons on the track at the point where it is so used must be anticipated by the company in the running of its cars or trains thereon, and it is the company's duty in the movement of cars at such places to give warning of the approach of its trains, to operate same at a reasonable rate of speed and to maintain a proper lookout.

2. Railroads—Presence of Persons on Track—Knowledge and Acquiescence of Company.—This duty depends not on the fact that the place of injury was in an incorporated town or city, but whether the company's track, at the place of the accident, was used by the public with such frequency or in such large numbers with the knowledge and acquiescence of the company that the presence of persons on the track should be anticipated.

3. Railroads—Presence of Persons on Track—Lookout.—That the accident occurred within the corporate limits of a town or city does not of itself impose upon the company the duty of warnings, lookout and other care. It is the habitual use, rather than the location of the track, that is determinative of the question whether one is a trespasser or licensee.

4. Railroads—Notice of Use by Trespasser.—When the use of the track is general and acquiesced in by the company it will be charged with notice of such use.

5. Railroads—Lookout in Favor of Licensees—Application.—The duty of lookout, warning and control which the law imposes upon railroad companies in favor of licensees applies to persons using the track as a footway and will not be extended so as to include sleepers or persons sitting or lying upon the ties or tracks.

MORGAN & HARVIE, MORGAN & NUCKOLS, SAMUEL M. WILSON and BENJAMIN D. WARFIELD for appellant.

T. W. WYLIE and W. G. DEARING for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Appellee's intestate, J. F. Smith, was run over and killed by a train of the appellant, and in this suit to recover damages for his death there was a verdict against the appellant for $5,000.00. The accident happened about 8 o'clock on the evening of October 25, 1916. The train was a local freight and was on its way from McRoberts

to Neon. It consisted of one box car, a caboose, four cars, the tender and the engine, in the order named, and at the time of the accident was backing, in a northerly direction, the first box car being the front of the train. There was no Y or turntable at McRoberts, and it was customary for this train to proceed to Neon where the engine was reversed on the Y. Between McRoberts, a town of approximately 2,500 inhabitants, and Neon, with 150 inhabitants, is the town of Fleming, with a population of probably 1,500 or 2,000 persons.

The northern or western limits of McRoberts are coincident with the southern or eastern limits of the town of Fleming. The accident occurred at a point about 30 feet from tipple No. 301 of the Elkhorn Coal Corporation, and within the limits of the town of Fleming, at a point approximately 400 feet from the last house in Fleming. There is a road crossing near the tipple. The public road parallels the tracks of the company for some distance at this place. In the use of this road and in going from one town to the other it is necessary to cross the creek some three or four times. The track is elevated from 6 to 8 feet above the level of the road and was in continuous daily use by from 75 to 200 persons traveling between the two towns, this use is spread over the entire day and as late as eleven o'clock at night.

Appellant insists it was entitled to a directed verdict. With this contention we cannot agree, though the weight of the testimony is in its favor.

Without undertaking to give a detailed statement of the evidence it might be summarized in part, as follows: For appellee: Decedent was a drinking man, and frequently got drunk; the sprees would last a week or ten days; he had them as often as once a month; when sober he was a good workman. As late as 7 or 7:30 the evening of the accident he was talking to one witness who said he appeared to be sober, he was standing erect and talked as he usually did. The train was seen by a number of persons backing from McRoberts. According to many of these there was no light on the front box car; two or three saw a white lantern on top of the car; some saw at least one man on top of the car; others saw a light on the caboose.

Decedent was last seen alive walking on the track when the box car was twenty or thirty yards from him.

Other than the noise of the train heard by some of the witnesses there was no sounding of the bell or blowing of the whistle. The scene of the accident was on a curve near the tipple referred to.

For the appellant: The flagman and one brakeman were on the top of the front box car with lighted lanterns and were keeping a lookout ahead; before leaving Mc-Roberts they had placed a yellow fuzee two or three feet above the draw-bar on the head end of the car. This fuzee will burn from ten to fifteen minutes; from the time they left McRoberts until they reached the point of accident was eight or ten minutes. The light from the fuzee enabled them to see from three to four rail lengths ahead of the car. The flagman said he did not see anything until the brakeman said: "Look there, what is that? I believe we have run over a man." Just as he spoke the flagman says he flashed his eyes down expecting something to be on the track. He hadn't seen anything, but he caught a glimpse of something just as the car passed over a white looking something near the end of the ties. He could not distinguish what it was. He immediately gave the signal to the engineer and the train was stopped after the engine had passed beyond decedent about 100 feet.

The brakeman on the front car, in an affidavit, read as a deposition, testifies to facts substantially the same as the flagman; he saw decedent when the end of the car was about 30 feet from him; decedent was lying on the track, partly across one of the rails; he immediately called the flagman, who gave the signal to stop. The train was running from six to eight miles an hour down grade, and there was no exhaust from the engine. The train whistled for two crossings, one about one-half mile north of Mc-Roberts and one north of the crossing south of the tipple. The bell was ringing and the fuzee was still burning after the train had stopped.

About two o'clock in the afternoon of the day of the accident decedent took a nap in the yard of a Mrs. Branham in McRoberts; he slept until sundown; he had a pint of whiskey in a quart bottle; this he consumed; he was seen in this yard by Mrs. Branham, her father and a schoolboy. After awakening from his slumber he started out of the yard and down the road "staggering and pitching along;" the last seen of him by two of these witnesses

was when he came to a turn in the road, and disappeared from view.

To have authorized a peremptory instruction in appellant's favor it should appear that admitting the testimony introduced in appellee's behalf to be true, as well as every inference fairly deducible therefrom, he failed to support his cause of action. This is not the case as there was evidence sufficient to warrant a submission to the jury.

It is earnestly argued that decedent was a trespasser and the company owed him no duty of lookout or warning.

This court has had frequent occasion to pass upon cases involving facts similar to these, and the rule applicable here might be thus stated: That where the public generally, with the knowledge and acquiesence of the railroad company, have continuously used its tracks for a long period of time the presence of persons on the track at the point where it is so used must be anticipated by the company in the running of its cars or trains thereon, and it is the company's duty, in the movement of cars at such places, to give warning of the approach of its trains, to operate same at a reasonable rate of speed and to maintain a proper lookout. This duty of the company depends not on the fact that the place of injury was in an incorporated town or city, but whether the company's track at the place of the accident was used by the public with such frequency or in such large numbers with the knowledge and acquiesence of the company that the presence of persons on the track should be anticipated. It is the habitual use, rather than the location of the track, that is determinative of the question, whether one is a trespasser or a licensee. That the accident occurred within the corporate limits of a town or city does not of itself impose upon the railroad company the duty of warning, lookout or other care necessary on streets or crossings. The track might be located within the corporate limits and yet not be on a street or place habitually used by the public.

L. & N. R. R. Co. v. McNary, 128 Ky. 408, 108 S. W. 398; Southern Railway Co. v. Sanders, 145 Ky. 679, 141 S. W. 77 (second appeal 154 Ky. 421, 157 S. W. 731); C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 75, 150 S. W. 29; Corder's Admr. v. C. N. O. & T. P. Ry. Co., 155 Ky. 536, 159 S. W. 1144; C. N. O. & T. P. R. Co. v. Blanken-

ship, 157 Ky. 699, 163 S. W. 1123; C. & O. Ry. Co. v. Dawson's Admr., 159 Ky. 296, 167 S. W. 125; Willis' Admr. v. L. & N. R. Co., 164 Ky. 124; 124 S. W. 18; C. & O. Ry. Co. v. Berry's Admr., 164 Ky. 280. 175 S. W. 340; C. & O. Ry. Co. v. Isaacs, 170 Ky. 190, 185 S. W. 816; Cornett's Admr. v. L. & N. R. R. Co., 181 Ky. 132, 302 S. W. 1054; L & N. R. R. Co. v. Vaughan's Admr., 183 Ky. 820, 210 S. W. 938.

While the accident occurred within the corporate limits of the town of Fleming, this of itself did not constitute decedent a licensee.

The evidence shows such a use of the track at the time and place of the accident as made this issue one for the jury.

Instruction No. 1 is criticised because it did not qualify the extent of the use of the track. This instruction was approved in Southern Ry. Co. v. Sanders, 145 Ky. 679, 141 S. W. 77. See Hobson, Blain & Caldwell on Instructions, sec. 521. Standing alone and unexplained the instruction might be misunderstood, but it was fully justified by the evidence in the Sanders' case and in any other case presenting similar facts, where the use was such as warranted a submission of that question to the jury. Unless a sufficient use be shown the case would be one for the court and not the jury. Willis' Admr. v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18.

It is urged there was no evidence that the company knew of the extent of the use. If the use of the track was general and acquiesced in by appellant it was charged with notice of such use, and this question was properly submitted in instruction No. 1; acquiescence implies consent and there could be no consent or approval without knowledge.

The court refused to give the following instruction tendered by appellant:

"If the jury believe from the evidence that J. F. Smith, the plaintiff's intestate, just before and at the time he was run over by defendant's train, was sitting or lying upon defendant's track or partly across one of the rails of said track, the jury will find for the defendant."

The theory presented by this instruction was a vital question in this case, and this issue raised by the testi-

mony of the company's brakeman should have been presented to the jury under proper instructions.

The use of the railroad tracks as footways is not due to any wish or intention on the part of the company that they be so used, indeed the contrary is true, but dispite many and varied efforts to keep the public off the tracks people persist in their use of them. It would seem that some plan or scheme should be provided by which the railroads should be accorded their superior if not exclusive right to use their property without the interference of the public.

Though extremely hazardous and the cause of many serious and fatal accidents, the use of railroad rights of way by pedestrians continues.

The sporadic or occasional use of the tracks by persons does not require or exact of the company's operatives or employes any duty other than the exercise of ordinary care by the means at their command to save from injury anyone on the track in danger, after their peril has been discovered. This is the only duty to trespassers or to those who have no right on the track. But if by continued or habitual use and in increasing numbers the use of the track may ripen into certain rights on the part of the pedestrian and corresponding duties by the company, he then becomes a licensee. Whether a person is a trespasser or a licensee depends upon the number of persons using the track at any given point. Use of a track at a certain place in the day time might be sufficient to classify the users as licensees, while at night the use may be so occasional at the same point as would constitute the user a trespasser.

While the use of the track at the place of accident was shown to be in such numbers as authorized a submission to the jury as to whether a pedestrian or one lawfully using the tracks was a licensee, if a person ceases to so use the track and decides to take a nap, with the track as a bed, or to sit or lie down upon the track, he thereby became a trespasser and the company owes him no duty other than to avoid injury to him after discovery of his peril. One who goes to sleep upon a railroad track is a trespasser, though at a point where persons are accustomed to cross or use the track in large numbers. C. N. O. & T. P. R. Co. v. Mayfield's Admr., 145 Ky. 305, 140 S.

W. 310; Cornett's Admr. v. L. & N. R. Co., 181 Ky. 132, 203 S. W. 1054.

The duty of lookout, warning and control which the law imposes upon railroad companies in favor of licensees applies to persons using the track as a footway and will not be extended so as to include sleepers or persons sitting or resting on the ties or track.

Upon a retrial of this case if the evidence is substantially the same as upon the first trial the court in lieu of instruction No. 7 tendered by appellant will instruct the jury as follows:

"If the jury believe from the evidence that J. F. Smith, plaintiff's intestate, just before and at the time he was run over by defendant's train was sitting or lying upon defendant's track or partly across one of the rails of said track, and the defendant or those in charge of said train after they saw decedent or discovered his peril, could not in the exercise of ordinary care and in the use of the means at its command, have avoided injuring him, the law is for the defendant and you will so find."

For the reasons herein stated the judgment is reversed for further proceedings consistent with this opinion.