## Cincinnati, New Orleans and Texas Pacific Railroad Co. v. Mayfield's Admr.

(Decided November 10, 1911.)

### Appeal from the Boyle Circuit Court.

1. Railroad—Lookout—Negligence.—The failure of those in charge of an engine to give reasonable warning of its approach or to maintain a reasonable lookout when the engine is backed in the dark without adequate light upon it at a point in the yards much frequented where the presence of persons on the track should reasonably be anticipated, is negligence for which the company is answerable to one thus run over by the engine.

2. Contributory Negligence.—One who sits down upon a railroad track and goes to sleep is guilty of such contributory negligence that he cannot recover although there was negligence on the part of those in charge of the train if his danger was discovered too late to avoid injuring him.

CHAS. H. RODES, JOHN GALVIN, GEORGE E. STONE for appellant.

ROBERT HARDING for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

On July 30, 1909, between 11 P. M. and 12 P. M., Norman Mayfield was killed in the yards of the Cincinnati, New Orleans and Texas Pacific Railroad Company at Danville, Kentucky. He was in the service of the company firing an engine called a clam shell and used in handling coal. His father, George W. Mayfield, operated the engine. Shortly before midnight he, with the permission of his father, left the clam shell to go to a restaurant and get a lunch. In going to the restaurant he went across the railroad yard. At this time a live engine was backing in on one of the tracks with a dead engine in front of it; that is, both engines were backing but the dead engine was backing in front of the live engine. Ed Weddle, the engineer in charge of the live engine, was in the cab of that engine, and W. L. Hudson, a brakeman, was in the front of the tender of the dead engine with a lantern in his hand; that is, he was on the end of the tender that was in front as the engine was backing along. As they were proceeding in this way the front wheels of the front trucks ran over Norman Mayfield's legs, injur-

ing him so that he died soon thereafter. This action was brought by his personal representative to recover for his death against the railroad company, Weddle, the engineer, and Hudson, the brakeman. The proof for the plaintiff on the trial showed that young Mayfield left the clam shell and within from two to five minutes thereafter his father was called by sone one who told him that his son had been hurt. He went at once to the place and found his son about sixteen feet back from the front of the tender. The proof for the plaintiff also showed that the place in the yard where the injury occurred was one much used by persons passing about; that there were no lights on either engine and that no bell was rung or signal given of their movement. On this evidence the court instructed the jury peremptorily to find for Hudson, but refused to instruct the jury peremptorily to find for the other two defendants. The defendants then introduced their evidence. Hudson testified that he was standing at the front of tender with a lantern in his hand, and when he got within eight feet of Norman Mayfield he discovered him sitting on the track with his head bent over his knees; that he signalled the engineer to stop and jumped from the tender and tried to pull Mayfield off the track but before he could get him off part of his clothing was caught by the tender and the front wheels passed over his legs before the engine could be stopped. Weddle confirmed the testimony of Hudson, but he and Hudson both state that it was a dark night and that the engine bell was not ringing; that no signal of the approach of the engine was given except that Weddle whistled when they started in on this track, five or six hundred feet away from the point where Mayfield was struck. They also agreed that there was no light about the dead engine except the lantern held by Hudson and the proof is not clear that this light was so held as to be seen by one in front. The case was submitted to a jury under this evidence, and they returned a verdict in favor of the plaintiff against the railroad company and Weddle in the sum of $5,000. The court entered judgment on the verdict and refused a new trial. The defendants appeal.

It is earnestly insisted that Mayfield was asleep upon the railroad track and there is much in the evidence to sustain this view. But this matter was clearly submitted to the jury by the instructions of the court. Instruction 7 given by the court is as follows:

"The court instructs the jury that if they believe from

the evidence that Norman Mayfield voluntarily went upon the track of the defendant company and sat down upon same and placed his head down upon his knees and this was his position at the time he was run upon and injured by defendant company's engine, then, he, the deceased, Norman Mayfield, was guilty of such contributory negligence as bars the plaintiff's right to recover, and they will find for the defendants, notwithstanding you may believe from the evidence that the defendants were guilty of negligence as stated in Instruction No. 1.''

The finding of the jury for the plaintiff under this instruction is a finding by them that the injury did not occur as stated by Hudson. The credibility of the witnesses is for the jury and we cannot disturb the verdict on the ground that it is palpably against the evidence. It is also insisted for the defendant that Mayfield had a safe way to go to the restaurant and that he voluntarily went across the yard incurring a danger that he need not have incurred. But this matter was also aptly submitted to the jury by the instructions of the court, and we do not see that the defendants' substantial rights were prejudiced in any way as to this matter.

The court did not err in refusing to instruct the jury peremptorily to find for the defendants. According to the evidence for the plaintiff the place was one where the presence of persons might reasonably be expected. It is within the corporate limits of Danville and employees were constantly moving about in this part of the yard. In a number of cases we have held that cars should not be moved in such places without a reasonable signal of their approach or without a reasonable lookout or light on them when it is dark. (Shelby v. C. N. O. & T. P. R. R. Co., 85 Ky. 224; Conley v. C. N. O. & T. P. R. R. Co. 89 Ky. 402; L. & N. R. R. Co. v. Potts, 92 Ky. 30; Gunn v. C. N. O. & T. P. R. R. Co., 108 Ky. 561; L. & N. R. R. Co. v. Lowe, 118 Ky. 260.) The court gave the jury this instruction:

''1. If you believe from the evidence that the track and place in the defendant's yard where Norman Mayfield was run over and injured was habitually and frequently used by the employees of the company in going to and from their place of work therein to their meals, and to the machine shop with the knowledge and acquiescence of the defendant, and was a place where the presence of employees of the company was to be anticipated, and that deceased was going from his work to his

midnight supper when struck, then it is the duty of the defendants when moving on that part of the track where he was injured to keep a lookout for employees using it as a footway, and to give reasonable signals and warning of the movements of its engines when approaching said place, and if you believe from the evidence that the defendant in charge of the company's two engines mentioned in evidence negligently failed to perform either or both of these duties in the movement of said engines, and that by reason thereof the plaintiff's intestate, Norman Mayfield, while so on the track at said place, was run upon and received injuries from which he died by said train and that he was at the time using ordinary care for his own safety, then you will find a verdict for the plaintiff against the defendants, Cincinnati, New Orleans & Texas Pacific Railway Company and Ed. Weddle, and if you do not so believe from the evidence you will find for the defendants.''

The instruction conformed to the rule laid down in the cases above referred to. There was sufficient evidence that the place where Mayfield was struck was habitually and frequently used by employees of the company in going to and from their place of work, and it was a place where the presence of persons should reasonably be anticipated.

Judgment affirmed.