## Sowards, Administrator v. Chesapeake & Ohio Railway Company.

(Decided May 12, 1925.)

### Appeal from Pike Circuit Court.

Railroads—Whether Fireman Discovered Peril of Trespasser too Late to Sound Warning and Slacken Speed Held for Jury.—In action for death of trespasser when struck by train, whether fireman discovered peril of decedent too late to sound warning and slacken speed held for jury.

PICKLESIMER & STEELE for appellant.

BROWNING & REED, KIRK, KIRK & WELLS and STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Appellant, as plaintiff below, sued appellee to recover for the death of his intestate. At the close of the evidence both for appellant and appellee, the trial court, over appellant's objection, peremptorily instructed the jury to find for appellee. This appeal is prosecuted from the judgment entered on the verdict rendered in conformity with that instruction.

It is .agreed by both parties that at the time appellant's intestate was killed he was a trespasser upon appellee's right of way and that, therefore, the rule of law governing the case is that those in charge of the train that killed him owed him no duty except to use ordinary care to prevent injury to him after discovering his peril.

Appellant insists that sufficient evidence was introduced tending to prove that the fireman in the engine cab saw his intestate on the railroad track at a time when the train was sufficiently far from him and for a sufficient length of time before it struck and .killed him to make it a question for the jury as to whether or not after discovering his peril those in charge of the train were negligent in not using the means at their command to warn him of his peril and to prevent running the train against and injuring and killing him. The evidence on the question in brief was as follows: The engineer did not see deceased at all, being located on the opposite side of the engine from him. The fireman testified as follows:

"A. I seen something near the railroad track when I was within about 400 or 500 feet, something

laying down in the path near the ties; when I got up within 30 feet of the thing or object I stuck my head out of the window and I seen that it was a man laying down in the path with his face down and the front of the train had passed him then.

"Q. What did he do when you got up close to him? A. Well, when I recognized that it was a man he kindly raised up and the engine cab or the tank springs hit him and knocked him forward.

"Q. How close were you to him before you discovered that it was a man? A. Within 30 or 35 feet; the front of the engine had passed him."

The engineer was introduced as a witness for appellant. After his testimony in chief and while he was being cross-examined by the attorney for appellee, after having been interrogated as to whether he saw deceased on the track, and testifying that he did not, he was further interrogated and answered:

"Q. You do not know whether he (referring to the fireman) ever seen him or not? A. No, sir, I do not know, but he did act as though he seen him.

"Q. How far was you away from the man at the time you say he acted as though he seen him? A. I judge about 400 or 500 feet.

"Q. You were in about 200 feet of Mr. Pearson at the time Mr. Moore acted like he seen a man? A. I do not know for sure; we were about 500 feet away when he looked or acted like he seen someone."

It was proved by a witness fishing from a boat in the river opposite to where the accident occurred that three or four minutes before the train passed he had seen deceased sitting either on that rail of the track next to the river or on the ends of the ties, and that while sitting there deceased lit and began to smoke nis pipe. It was proved by a little girl who was fishing in the river that she was looking at deceased when the train struck him and that he was sitting on one of the rails of the track. It was proved that tobacco crumbs were found on the ballast and ties; that a burned match was found there and spittle was found on the ends of the ties. A broken pipe stem and fragments of deceased's clothing were found on or near the track. Footprints were found between the ends of the ties that indicated someone had been sitting with their feet resting there. The train was

one of appellee's fast passenger trains, consisting of an engine and tender and seven coaches. It was running, according to the engineer's estimate, between 35 and 40 miles per hour. The engineer estimated that he might have stopped the train in about 700 feet with safety to his train and passengers. It was admitted that no warning blasts from the whistle were sounded and that no effort was made to stop the train until after it had struck deceased.

It, therefore, appears that the fireman from the cab of the engine while it was yet 500 feet from him saw deceased. He testified that he did not then recognize the object he saw as a man. At that time his looks or actions were such as to cause the engineer to give the testimony above quoted. We cannot understand from his testimony whether from the time he first saw the object when 500 feet away, up until the time when within 35 feet of it, he stuck his head from the window and discovered that it was a man, he continued to observe to see what it was, or whether he looked elsewhere until he leaned out the window when it was only 30 feet away. His discovery of the object certainly imposed upon him the duty of continuing to observe to ascertain whether or not it was a human being. When we consider the fact admitted by the fireman that he discovered the object which proved to be a human being while the train was yet 500 feet away in connection with the effect that discovery had upon him as described by the engineer, and then take into account the further facts introduced in evidence, the fisherman from the middle of the river only three or four minutes prior to the accident saw the deceased sitting either on the rail or the ties smoking his pipe, the little girl was looking at deceased when he was struck by the train and he was then sitting upon one of the rails of the track, the tobacco crumbs, burned match, spittle, and tracks were found so situated as to corroborate the statements of the witnesses that deceased was sitting on one rail of the track, all of which tend to contradict the fireman's testimony that when he first saw deceased he was lying off of the track and out of danger and that he did not then realize it was a human being, it is extremely hard to escape the conviction that there was sufficient evidence to make it a question for the jury as to whether or not they would accept the fireman's testimony that he discovered the peril of deceased too late to even try to prevent his injury and death. It could not be contended

that if while the train was yet 500 feet away those in charge of the engine discovered the peril of deceased they did not owe him the, duty of sounding warning blasts from the whistle to advise him of his peril and of applying the brakes in emergency so as to slacken the speed of the train as much as possible in order to give him all possible time to realize his peril and effect his escape. This court has concluded that under all the facts it was a question for the jury and that the trial court erroneously sustained appellee's motion for a directed verdict at the close of the testimony.

Wherefore, the judgment herein is reversed and this cause remanded for further proceedings consistent herewith.