## Louisville & Nashville Railroad Company v. Stephen Ison's Administrator.

(Decided November 23, 1926.)

## Appeal from Letcher Circuit Court.

1. Railroads—Railroad Engineer, Discovering Unknown Object on Track, Held Not Required to Check Speed, and Proceed on Assumption that it·was Human Being.—Where railroad engineer discovered object on track and ·could not tell what it was, and there was nothing in surroundings to impose duty on him to know what it was, he was not required to check speed of train and proceed on assumption that object might be human being.

2. Railroads.—Evidence of negligence in failing to stop train or give warning when engineer saw object on track, which turned out to be human being, held insufficient.

WOODWARD, WARFIELD & HOBSON, MORGAN & HARVIE, FIELDS, DAY & FIELDS and C. S. LANDRUM for appellent.

R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellee, Stehphen Ison's administrator, recovered judgment in the Letcher circuit court against appellant, Louisville & Nashville Railroad Company, for $2,500.00 in an action against it for the death of his intestate, alleged to have been caused by its negligence.

Appellant insists that the trial court erred in refusing to peremptorily instruct the jury to find for it at the close of appellee's evidence and at the close of all the evidence. It is conceded that appellee's intestate was a trespasser upon appellant's right of way, and that therefore those in charge of its train which ran over and severed intestate's head from his body owed him no duty except to use ordinary care to prevent injury to him after discovering his peril. The engineer in charge of the train was introduced as a witness for appellee. He testified that the train was composed of the engine, tender, three loaded freight cars and a caboose. It was about 7:20 o'clock p. m., September 11, 1924, and dark. The following quotation embodies all of the testimony found in the record tending to establish negligence upon the part of appellant after the peril of appellee's intestate was dis-

covered, or when, if at all, his peril was discovered before he was killed:

"Q. How was the track immediately south or down the creek from where this man was run over, whether it was a straight track or not? A. It was a slight curve; we come off of a slight curve just before we run over the body. Q. How far from the body? A. I would say about eighty or ninety feet. Q. Eighty or ninety feet? A. Yes, sir. Q. Did you see this man before you run over him? A. I saw an object on the track that afterwards I suppose proved to be the man. Q. Did you know what the object was? A. No, sir, I couldn't tell in that short distance, I had to see him what it was. Q. What did you take it to be? A. Well, I was debating in my mind what it might have been, the possibility of its being some form of stock or possibly a hog or dog or maybe a few blocks of coal or some cinders, I was debating that in my mind. Q. You first saw it when you were eighty or ninety feet away from it, A. Yes, sir."

He testified further that he did not blow the whistle or ring the bell or apply the brakes in an effort to stop the train until after the engine had run over the object which he had seen, when, smelling the odor of whiskey, he thought possibly it was a man. He then stopped the train and upon investigation found appellee's intestate had been run over, and that his head had been severed from his body. A broken bottle found where he had been accounted for the whiskey odor. Appellee introduced other testimony which he insists was sufficient to establish that the train in question traveling at the rate of speed, 12 miles per hour, testified to by the engineer, could have been stopped in approximately 50 feet. Hence, it is insisted for appellant, that the evidence authorized the submission of this case to the jury and supports the verdict returned. The cross-examination of the engineer developed that the object which he saw concerning which he testified for appellee, as above quoted, was lying down on the railroad between the rails. Three witnesses testified for appellee that they passed his intestate shortly before he was run over and that he was then sitting on the right rail of the track as they were proceeding with his feet between the rails, bent over with his hands on

his legs and his head on his hands. The testimony of one of those witnesses established that he had been drinking shortly before that. One of them estimated the time that elapsed after they passed him before the train ran over him at 10 or 15 minutes, another at 5 or 6 minutes, and the other at a "few minutes." The testimony establishes then that it was night; that the train came off of a curve; and that when about ninety feet from him the engineer discovered an object on the track. He testified that he did not know what it was and in the short distance and time he could see it he could not tell what it was. The evidence from the witnesses for appellee that when they passed him appellee's intestate was sitting on the rail does not tend in the least to contradict the engineer's testimony that when he saw the object it was lying on the right of way between the rails. The condition and position in which they testified he was when they passed him and the time that elapsed fully accounts for the change of the position of deceased between then and when the engineer first saw him.

The rule is firmly established in this jurisdiction that, where trainmen discover an object upon or dangerously near the track and can not tell what it is and there is nothing in the surroundings to impose the duty upon them to know what it is, the defendant does not have to check the speed of the train and proceed upon the assumption that the object may be a human being. See Spiegel v. C. N. O. & T. P. Railroad Company, 170 Ky. 285; C. N. O. & T. P. Railroad Company v. Reynolds' Admr., 102 S. W. 888; L H. & St. L. R. Company v. Hathaway's Executrix, 121 Ky. 666; Goodman's Admr. v. L. H. & St. L. R. Company, 115 Ky. 13. The reasons upon which the rule above is founded are fully discussed in those opinions, and need not here be repeated. This case seems clearly to fall within that rule. There is no evidence in the record that the engineer couid tell when he saw the object on the track that it was a human being. No other member of the train crew appears to have seen it. While the train was running the distance of ninety feet he had an exceedingly small interval of time in which to look at the object to ascertain what it was. It was at a place where no lookout duty was imposed. Nothing in the surroundings required him to know what the object was. In that state of case, under the rule above, he

was not required to check the speed of the train or to proceed upon the assumption that the object might be a human being.

Appellee insists, however, that the rule above was modified by and that the facts of this case bring it clearly within the rule announced in Sowards, Administrator v. C. & O. Railroad Company, 208 Ky. 840. As to this he is in error. In that case the fireman from the cab of the engine testified that he discovered the object on or near the track while the train was yet 500 feet away, but that he did not recognize it as a man. It was held that the other facts and circumstances in evidence were sufficient to make it a question for the jury whether he knew that the object he saw was a human being, notwithstanding his statement to the contrary. While being interrogated for plaintiff in that case, the engineer testified that while the train was about 500 feet away his fireman acted as though he saw a man on the track. The fireman testified that the object he saw was lying on the side of the right of way and out of danger. The other evidence of the case, however, tended to establish that the person who was killed in that instance was sitting upon one rail of the track. Many facts and circumstances appearing in that record, which may be had by reference to the opinion, *supra,* tended to establish that fact, especially the testimony of a little girl who stated that she was looking at deceased when he was run over and killed and that he was then sitting upon one of the rails of the track. Hence, it can not be said that that opinion modified the rule, *supra,* to any extent, but rather that it recognized and applied it. It was held that a case was made for the plaintiff because there was evidence that the fireman in the engine cab discovered a human being on the track in time to be charged with the duty of warning him and of using the means at his command to prevent injury to him after discovering his peril. No such state of case is here presented.

For the reasons indicated, this court is of the opinion that the trial court erred at the conclusion of the evidence for appellee and at the conclusion of all the evidence in refusing the peremptory instruction offered by appellant. In view of this conclusion we deem it unnecessary to discuss or determine any of the other questions presented.

The judgment is reversed and the cause remanded, with direction that appellant be granted a new trial, and for other proceedings not inconsistent herewith.

Judgment reversed.