# Louisville & N. R. Co. v. Byrge's Adm'x.

(Decided May 17, 1938.)

ASHBY M. WARREN, J. MILLER WHITE, CRAFT & STANFILL and C. S. LANDRUM for appellant.

JESSE MORGAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

About 5 o'clock on the morning of June 17, 1936, a freight train of the Louisville & Nashville Railway Company, going from Lothair toward Hazard, was stopped several hundred feet before reaching the depot at Hazard and after the engine and two or three of the cars had passed over Ezekiel Byrge who was lying on the tracks. Immediately after the train stopped, the trainmen took him from under the cars to a hospital at Hazard, where he died about a week later.

Thereafter, Mrs. Martha Lethgo, his mother, as his administratrix, instituted this action against the railroad company to recover for his death, alleging in substance that his death was due to injuries sustained as a direct and proximate result of the negligent operation of the train. By verdict and judgment the administratrix recovered the sum of $10,000, and the railroad company is appealing.

As grounds for reversal it is argued (1) that the court erred in not sustaining appellant's motion for a peremptory instruction to find for it, and (2) in refusing to give instructions offered by it.

The evidence shows that after being taken from under the train appellee's decedent had bruises and contusions on both legs, light scratches or marks on other parts of the body and arms, a cut or wound in the back of the head, and a fractured vertebra of the neck. The injuries to the neck, according to the evidence of

the attending physician, caused paralysis of the arms and legs. After about nine witnesses had been introduced by appellee her counsel announced that they would close, and appellant thereupon made a motion for a peremptory instruction. While this motion was being argued and considered in chambers, the court, at the request of counsel for appellee, permitted them to call as a witness, Tom Jarvis, formerly an employee of appellant, and who was the engineer in charge of the engine when it passed over the body of deceased. None of the first nine witnesses introduced for appellee were at the scene when the engine and cars passd over Byrge and knew nothing of the circumstances until he was being taken from under the train. He testified that on approaching the scene he was keeping a lookout ahead and discovered the bulk of something upon the track, but thought it was a paper; that it appeared to be a wrapping from a bag of flour or meal; that the train was traveling at a speed of something like 10 to 15 miles an hour, and that after he discovered the object on the track he had ample time in which to have stopped the train had he known the object was a human being, but that he did not discover it until too late to have stopped the train by any means at his command. While the evidence of Jarvis is to the effect that he did not discover that the object on the track was a human being until he had actually passed over it, we are at loss to understand how he then learned the fact, since he apparently could not then see the body; however, he is very positive in his statements that he did not know it was a human being in time to have stopped the train by any means before he reached it. Much evidence was introduced by appellee in an attempt to show such general use of the railroad track by pedestrians between Hazard and Lothair as would impose upon appellant and its employees the duty of anticipating the presence of persons upon the track and necessitate precautionary measures to avoid injuring them; but in the proven circumstances it is unnecessary to go into that phase of the case, since, if one walking or standing upon the track at that point would be treated as a licensee, one lying prostrate or sitting or crouching upon the track would not be regarded as such but would be in the same category as a trespasser to whom appellant or its agent or employees owed no duty until it actually discovered his peril. It is an established doctrine in this jurisdiction that, regardless of the location, one lying

or sitting upon a railroad track will be treated as a trespasser to whom employees of the company in charge of a train owe no duty of lookout, warning, or control, or other care, except to use ordinary care to avoid injuring him after the discovery of his peril. Lee's Adm'r v. Hines, 202 Ky. 240, 259 S. W. 338; Davis v. Crawford's Adm'x, 203 Ky. 71, 261 S. W. 835; Spiegle v. Cincinnati, N. O. & T. P. Ry. Co., 170 Ky. 285, 185 S. W. 1138.

In Bevin's Adm'r v. Chesapeake & O. Ry. Co., 190 Ky. 501, 227 S. W. 794, it is said (page 795):

"In the following cases we held that one who sits or prostrates himself upon a railroad track, though it be a place where persons are licensed to use the track, is in no better position than a mere trespasser, and in such case the servants of a railroad company in charge of a train are only required to use ordinary care to protect him from injury after discovering his peril. Louisville & N. R. Co. v. Smith's Adm'r, 186 Ky. 32, 216 S. W. 1063; Cincinnati, N. O. & T. P. Ry. Co. v. Mayfield's Adm'r, 145 Ky. 305, 140 S. W. 310; Cornett's Adm'r v. Louisville & N. R. Co., 181 Ky. 132, 203 S. W. 1054; Lyons' Adm'r v. Illinois Cent. R. Co., 59 S. W. 507, 22 Ky. Law Rep. 1032; Louisville & N. R. Co. v. Bays' Adm'r, 142 Ky. 400, 134 S. W. 450, 34 L. R. A. (N. S.) 678."

Under an equally well-established rule in this jurisdiction the peril of Byrge was not discovered until the trainmen discovered that the object seen on the track ahead was a human being. In Spiegle v. Cincinnati, N. O. & T. P. Ry. Co., supra, it is said (page 1140):

"* * * it has been repeatedly held by this court that, where trainmen discover an object upon or dangerously near the track and cannot tell what it is and there is nothing in the surroundings to impose the duty upon them to know what it is, that the defendant does not have to check the speed of the train and proceed upon the assumption that the object may be a human being."

To the same effect, see Louisville & N. R. Co. v. Ison's Adm'r, 216 Ky. 708, 288 S. W. 668, and cases therein cited.

Not only did appellee fail to show that the peril

of her decedent was discovered in time for the train to have been stopped, but, on the other hand, the evidence of her own witness, who was the engineer in charge of the train, clearly refuted any such idea and shows that the object on the track was not discovered to be a human being until it was too late to stop the train before reaching it. Necessarily, therefore, under the established rule, we are constrained to hold that the court erred in not sustaining appellant's motion for a peremptory instruction. There is evidence strongly tending to indicate that the fatal injuries sustained by Byrge were inflicted by some other person some hours before the engine and cars passed over him. What we have already said renders it unnecessary to go into that phase of the case or to discuss the second ground assigned for reversal.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.